## J. W. RIGGINS v. CITY OF WACO.

Decided November 15, 1905.

**1.—Mayor—Removal—Misconduct in Office.**

Under the provision of the charter of the city of Waco giving the city council power to remove any officer for incompetency, corruption, misconduct or malfeasance in office, the wilful and persistent refusal of the mayor to draw warrants on the city treasurer, necessary for the payment of money therefrom, to pay the monthly salary of an officer or employe as fixed by order of the council, or for the payment of a claim allowed and ordered paid by the council, such orders of the council having been vetoed by him and thereafter regularly passed by the council over his veto, constitutes such misconduct in office as to justify his removal.

**2.—Same—Evidence—Other Charges.**

Evidence as to other transactions between the mayor and city council tending to show a determination on his part to carry out his own will in defiance of the laws of the city as enacted by its council could be considered in determining the motive of his refusal to draw warrants for lawful claims against the city, though such other transactions were made the basis of distinct charges of official misconduct and were each found insufficient in itself to constitute such misconduct.

**3.—Removal from Office—Review by Court.**

The action of the city council in removing the mayor, if based upon a hearing upon charges constituting official misconduct and evidence supporting such charges, is conclusive and not subject to revision by the court in an action brought by him to recover his salary for the remainder of his term.

**4.—Supreme Court—Court of Civil Appeals—Writ of Error.**

The fact that the Supreme Court granted a writ of error upon a ground questioning the correctness of a decision, where not followed by a final ruling upon that point on hearing, is not to be taken as an overruling of the judgment of the Court of Civil Appeals and binding upon it.

**5.—Executive Officer—Legislative Power.**

It is the duty of an executive officer to carry out the will and enforce the laws enacted by legislative power, and an expressed determination on his part to carry out his own ideas of right and wrong in disregard of legislation constitutes legal incompetency in office.

Appeal from the District Court of McLennan County. Tried below before Hon. Sam R. Scott.

*Baker & Thomas,* for appellant.—Grant that the appellant refused to sign the vouchers in favor of Allen D. Sanford, Dan Nicholson and J. P. Nelson as charged, this did not justify the appellant's removal from the office of mayor of the city of Waco, because, the undisputed evidence shows that his action in so doing, comported with honesty and a desire

to faithfully discharge the duties of his office, as such mayor, as contradistinguished from that bad motive, wilful or corrupt action, essential to constitute misconduct in office. Charter, city of Waco, art. 273, sec. 38; Sayles' Civ. Stats., arts. 3534-3536; Johnson v. City Council of Galveston, 11 Texas Civ. App., 469; Watson v. State, 9 Texas App., 212; Brockenridge v. State, 27 Texas App., 531; State v. Alcorn, 78 Texas, 342; Commonwealth v. Kneeland, 20 Pick., 220; Felton v. United States, 96 U. S., 702; State v. Preston, 34 Wis., 675; Tompert v. Lithgow, 1 Bush (64 Ky.), 176.

It is uniformly held that the word wilful, when used in a penal statute, means with evil intent, or without reasonable grounds to believe the act unlawful. Thomas v. State, 14 Texas App., 200; Rose v. State, 19 Texas App., 470; Loyd v. State, 19 Texas App., 321; Trice v. State, 17 Texas App., 43; Yoakum v. State, 21 Texas App., 260.

The court below erred in its conclusions in considering the facts found under charges 4, 5, 6, 7, 8 and 9, as illustrative of motive with respect to charges 1, 2 and 3, because there is no connection between these charges, nor facts adduced under them which tend to illustrate motive with respect to charges 1, 2 and 3. Wharton's Am. Crim. Law, sec. 467; Greenleaf on Evidence, sec. 52; Shaffner v. Commonwealth, 72 Pa. St., 60; State v. Renton, 15 N. H., 174; Coleman v. People, 55 N. Y., 90; Commonwealth v. Tuckerman, 10 Gray, 198; Commonwealth v. Campbell, 7 Allen, 542.

The right of review of the action of the city council exists, because there was no evidence which justified the removal or evidence which tended to show official misconduct. Terrell v. Green, 88 Texas, 547; State v. Common Council of Duluth, 55 N. W. Rep., 119; People ex rel. Nichols v. Mayor, etc., 19 Hun, 452; People ex rel. Bancroft v. Weigant, 14 Hun, 546; People v. Board of Police, 39 N. Y., 506; People ex rel. Folk v. Board of Police, 69 N. Y., 408; People ex rel. Clapp v. Board of Police, 72 N. Y., 415; The People v. Board of Fire Commissioners, 72 N. Y., 445; Mech. on Pub. Off., secs. 979, 980; High on Ex. Legal Remedies, sec. 67; Milliken v. City Council, 54 Texas, 388; Lindsey v. Luckett, 20 Texas, 516; State v. Common Council, 1 Dutch. (25 N. J. L.), 536; Metsker v. Neally, 21 Pac. Rep., 207; The People v. Hallett, 1 Col., 352; Ex parte Lusk, 82 Ala., 519; Ex parte Diggs, 52 Ala., 381; Johnson v. City of Galveston, 11 Texas Civ. App., 469; McCulley v. State, 53 S. W. Rep., 134; People v. Bissell, 68 Am. Dec., 592; Wright v. Wright, 56 Am. Dec., 723; State ex rel. Hill v. Common Council, 9 Wis., 258.

We call attention to the fact, that the Supreme Court in the case of J. W. Riggins v. Richards, 80 S. W. Rep., 524, granted a writ of error, upon the same facts as in the case at bar, upon the ground, that the evidence did not justify the removal of the appellant. This case was dismissed because appellant's term of office expired before the case could be reached for submission after the grant of the writ of error; and thereupon, Gaines, C. J., said: "It is accordingly ordered that this case be dismissed, without prejudice to the relator's right to bring an action for his salary."

*Lud. T. Williams* and *Allan D. Sanford,* for appellee.—After the re-

moval of a city officer he can not maintain suit against the city, for salary accruing after the removal, until he has been declared entitled to the office in a direct proceeding for that purpose. Hagan v. City of Brooklyn, 126 N. Y., 643; Nichols v. McLean, 101 N. Y., 526, 5 N. E. Rep., 347; Gorley v. City of Louisville, 20 Ky. L. (Ct. of App.), 602; Hagner v. Heyberger, 7 W. & S. (Pa.), 104, 42 Am. Dec., 220; City of Hoboken v. Gear, 27 N. J. Law., 267; Selby v. Portland, 14 Ore., 243; Lee v. Mayor, 40 Atl. Rep., 663; Van Sant v. Atlantic City, 53 Atl. Rep., 701; Hunter v. Chandler, 45 Mo., 452; City of Buffalo v. Mackay, 15 Hun, 204; Luzerne Co. v. Trimmer, 95 Pa., 97; Riley v. Kansas City, 31 Mo. App., 439; Wood v. Mayor, 55 N. Y. Super. Ct., 230; Dolan v. Brooklyn, 55 Hun, 448; 1 Smith's Modern Law of Municipal Corporations, sec. 181, p. 184; Throop on Public Officers, sec. 510.

Neither the title to a public office, nor any other main question, can be determined in a collateral proceeding. Same authorities, and also the following: Ex parte Call, 2 Texas App., 500; Kingsland v. Harrell, 1 White & W., App. Civ. Cas., sec. 736; Stubbs v. Galveston, 3 Texas App. Civ. Cas. (Willson), sec. 144; Watts v. State, 22 Texas Ct. App., 578; Leach v. Cassidy, 23 Ind., 449; Desmond v. McCarthy, 17 Iowa, 525; Riddle v. County of Bedford, 7 Serg. & R., 392; Fowler v. Bebee, 9 Mass., 231.

The sole question which can be considered by the court in a proceeding to review the action of the governing body of a municipal corporation in removing from office an officer of the corporation, where no right of appeal is given, is whether the action of the city council was void, and to determine this the court will look to only three things: (1) Were the charges such as would warrant the removal of the officer, if proved? (2) Was the officer given opportunity to defend? (3) Was there any evidence introduced on the impeachment trial tending to prove the truth of the charges? Milliken v. City Council, 54 Texas, 391; Johnson v. Galveston, 11 Texas Civ. App., 469; Trigg v. State, 49 Texas, 645; State ex rel. Maxwell v. Crumbaugh, 26 Texas Civ. App., 521; Richards v. Clarksburg, 20 A. & E. Corp. Cases, 111; State v. Douglass, 7 Am. Rep., 87; Ex parte Sawyer, 124 U. S., 200; Wilson v. North Carolina, 169 U. S., 586; Taylor v. Beckham, 178 U. S., 572; Dillon's Municipal Corporations (4th ed.), secs. 244-255.

The acts complained of, in at least several of the charges, constituted offenses which would warrant appellant's removal, if proved, in that they were official misconduct and showed incompetency; and there was sufficient evidence before the city council to establish same. Milliken v. City, 54 Texas, 391; Johnson v. City of Galveston, 11 Texas Civ. App., 469; State v. Alcorn, 78 Texas, 392; Breckenridge v. State, 27 Texas App., 531; Riggins v. Richards, 97 Texas, 229; Riggins v. Richards, 79 S. W. Rep., 84; Shaw v. Macon, 21 Ga., 280; Macon v. Hays, 25 Ga., 590; State v. Allen, 5 Kan., 213; State v. Foster, 32 Kan., 14, affirmed 112 U. S., 201; McMaster v. Herald, 56 Kan., 231; Geddes v. Thomastown, 46 Mich., 316; Van Orsdall v. Hazard, 3 Hill (N. Y.), 243; State v. McCarty, 65 Wis., 163; State v. Leach, 11 Am. Rep., 172; Minkler v. State, 14 Neb., 181; Commonwealth v. Williams, 79 Ky., 42;

Sevier v. Justices, 1 Peck (17 Tenn.), 334; Commonwealth v. Chambers, 1 Marsh. (24 Ky.), 108; Rev. Stats., art. 3534; 23 Am. and Eng. Ency. of Law (2d ed.), 442, 446; Throop on Public Officers, secs. 368, 376.

FISHER, CHIEF JUSTICE.—This is a suit by appellant Riggins against the city of Waco to recover $3,400 and interest, the alleged balance due him as mayor of the city from the first day of December, 1902, until the 14th day of April, 1904.

Appellant while duly elected and serving as mayor of the city of Waco, was removed from his office by a resolution of the council of the city. He claims that his removal was illegal and unauthorized, and that therefore he was entitled to the amount of salary sued for.

The case was tried before the court which rendered a judgment in favor of the appellant for $33.33, the amount of salary due him from December 1, 1902, to December 5, 1902. The trial court filed its conclusions of law and fact, which are to the effect that Riggins was properly removed by the council, and therefore was not entitled to the balance of the salary sued for, said findings being as follows:

"I find that the plaintiff, J. W. Riggins, was duly and legally elected mayor of the defendant, the city of Waco, on the 1st day of April, 1902, and that he duly and legally qualified as such mayor and was inaugurated into office on the 10th day of April, 1902, and that he occupied the said office by legal election and qualification for the term of two years prior thereto, and that the office of mayor of said city was then and prior thereto, and has been ever since of a greater value than $500, and that the plaintiff's salary, as such mayor, amounted to $2,400 per annum; that the plaintiff began the performance of the duties of said office immediately upon being inaugurated, and continued therein until removed by the city council of the city of Waco on the 5th day of December, 1902, as hereinafter stated, and that he has not performed any of the duties of said office since said last named date, although he has tendered performance of his services as such mayor and has been at all times ready and willing to perform the duties of said office; that he has not been paid any salary as such mayor since the first day of December, 1902, except as to the tender of $33.33 and interest thereon, paid into the registry of this court to cover the period from the 1st to the 5th day of December, 1902, inclusive, as hereinafter stated; that the amount of the salary of said office from the 5th day of December, 1902, to the end of the term for which plaintiff was elected is the sum of $3,366.33; that this suit was filed after the expiration of said term of office; that before the filing of this suit, plaintiff made demand in writing upon the defendant for the total amount of the balance of the salary of said office from December 1, 1902, until the expiration thereof; that the defendant admitted in its answer filed herein that it was indebted to the plaintiff on account of his claim for salary for said office from the 1st to the 5th days of December, 1902, inclusive, and tendered and paid into the registry of this court the sum of $33.33, and the further sum of $9.00 by way of costs; that the said sum so tendered and paid into the registry of the court on account of salary, was not tendered to the plaintiff, or any one authorized to accept the same for him, before this

suit was filed; that the amount so paid into the registry of the court aforesaid is the total amount due on account of said salary from the 1st to the 5th days of December, 1902, inclusive, together with interest thereon until the date of payment, and all costs of this suit, up to and including the entry of the final judgment herein.

"I further find that on the 11th day of September, 1902, there was filed with the city secretary of said city the nine charges specifically set out in defendant's answer herein as 'Exhibit A' thereto, charging plaintiff Riggins with incompetency, corruption, misconduct and malfeasance in office, which said charges were signed by seven of the aldermen of said city, as therein shown; that at the regular meeting of said council on the said 11th day of September, 1902, the said charges were duly presented to the said city council; that the hearing thereon was set for the regular meeting of said council on the 18th day of September, 1902; that plaintiff was given due notice thereof; that on said 18th day of September, 1902, the said Riggins being present in person and by counsel, the said city council proceeded to hear the said charges; that after a partial hearing of said charges, the proceedings therein were interrupted and stopped by injunction; that the injunction being dissolved, the hearing upon said charges was resumed by the said city council and duly and legally had, the said Riggins being present, and finally concluded on the 5th day of December, 1902, when the said city council by a vote of seven ayes and two noes, one member being absent, passed and adopted the ordinance and resolution set out in defendant's answer as 'Exhibit B' thereto, and removing him from said office of mayor.

"I further find that the charter of the city of Waco, as contained in the act of the Legislature of the State of Texas of 1889, and the various amendments thereto, makes the following provisions:

" 'The mayor of the city shall be the chief executive officer of said corporation and shall be vigilant and active at all times in causing the laws and ordinances for the government of said city to be duly executed and put in force.'

" 'All ordinances and resolutions adopted by the council shall, before they take effect, be placed in the office of the city secretary; and if the mayor approve thereof he shall sign the same, and such as he shall not sign he shall return to the city council with his objection thereto.'

" 'Upon the return of any ordinance or resolution by the mayor, the vote by which the same was passed shall be reconsidered and if, after such reconsideration, two-thirds of the whole number of aldermen agree to pass the same and enter their vote on the journal of their proceedings, it shall be an ordinance of said city.'

" 'If the mayor shall neglect to approve or object to any such proceeding for a longer period then three days after the same shall be placed in the city secretary's office, as aforesaid, the same shall go into effect.'

" 'The city treasurer shall receive and securely keep all monies belonging to the city, and shall make all payments of the same upon the order of the mayor attested by the secretary under the seal of the corporation; provided that no order shall be paid unless the said order shall show

upon its face that the city council has directed its issuance, and show
for what purpose it was issued.'

" 'The city council shall have power to remove any officer for in-
competency, corruption, misconduct or malfeasance in office, after due
notice and an opportunity to be heard in his defense.'

"I further find, relative to the said charges, and the evidence adduced
thereon in the hearing before the said city council as follows:

"Upon charge No. 1, I find that on March 28, 1901, the city council
of the city of Waco passed an ordinance amending an ordinance fixing
the salaries of officers of the city for the years 1901-1902, to be elected
and appointed at the ensuing election and appointment of city officers;
that the said ordinance fixed the salary of the city attorney for the
ensuing term of office of two years at $125 per month; that the plaintiff
Riggins, as mayor of said city, in proper time and in due form, filed his
objection to said ordinance, vetoing the same; that at the next regular
meeting of the city council, to wit, on April 4, 1901, the said veto
message was duly presented to the city council, and the said ordinance
was then passed by the city council over the mayor's veto by the requisite
two-thirds of all the aldermen, and the said ordinance thereby at once
after its passage became a law of the city; that Allan D. Sanford was
elected city attorney at a general election held in said city on April —,
1901, and was installed and inaugurated into said office for the said
term covered by said salary ordinance on April 11, 1901; that under
the said salary ordinance the said salary of the said city attorney for
the said term, beginning with the date of his installation, was payable
monthly, and that in order to pay the same it was necessary for the
mayor to cause to be issued and himself to sign a check or draft on the
city treasurer each month when the monthly payment became due, and
that it was his duty under the law so to do; that before the time for the
issuance of the first check or draft for said salary, to wit, the end of the
month of April, 1901, plaintiff, Riggins, as mayor instructed the city
secretary to issue a check or draft each month thereafter for the salary
of the city attorney for the sum of $100 only; that plaintiff Riggins, as
mayor of said city wilfully, persistently and deliberately failed and re-
fused each month, for the period beginning with the month of April,
1901, and ending with the month of August, 1902, to cause to be issued
and himself to sign a draft or check upon the treasurer of said city in
payment for the full amount due to the city attorney under said salary
ordinance, and that he thereby wilfully, persistently and deliberately
failed and refused to execute the law of the city as contained in said
ordinance.

"I conclude as a matter of law that plaintiff Riggins said acts con-
stituted official misconduct for which he could lawfully be removed by
the city council.

"Under charge No. 2, I find as follows: That Dan Nicholson held
a commission as special police, which commission stipulated in the face
thereof 'without compensation;' that thereafter, to wit, on April 25,
1901, the city council passed a resolution employing said Dan Nicholson
to do certain special police work for the city for the ensuing twelve
months, at the rate of $20 per month, that plaintiff Riggins, as mayor
of said city, in due form and proper time filed his objections to said

resolution in a message to the city council vetoing the same; that at the next regular meeting of the city council, to wit, on May 2, 1901, the council by the requisite number of all the aldermen duly and legally passed the said resolution over the mayor's veto and that thereupon the same became a law of the city; and that thereunder a contract was formed between the city and the said Nicholson, whereby for the said certain special police work done by the said Nicholson, the city became liable to pay to the said Nicholson the sum of $20 per month at the end of each month from May 2, 1901, for the period of one year, notwithstanding the stipulation contained in the commission when originally issued; that the said Nicholson rendered the said services for the said period; that the only way in which the said monthly payments could be made was by a check or draft on the treasurer caused to be issued by the said Riggins and signed by him officially as mayor, and that it was his duty under the law to so cause to be issued and to sign such checks; that plaintiff Riggins, as mayor of said city, wilfully, persistently and deliberately failed and refused each month during the said period of one year to cause the said check or draft on the treasurer to be issued and to sign the same; and that after the expiration of said period of one year the said Nicholson filed a suit in the County Court of McLennan County, Texas, against the city of Waco for the total amount due him under said contract; that shortly thereafter, to wit, on June 26, 1902, at a regular meeting of the city council, the city attorney stated to the said council that said suit had been filed, and requested instructions from the council as to his action in regard to the matter; that thereupon at said meeting the council passed a resolution instructing the city attorney to settle the suit by compromise in the best manner possible to the interests of the city; that plaintiff Riggins as mayor, in due form and in proper time, filed with the city secretary his objections to the last named resolution in a message to the city council vetoing the same; that at the next regular meeting of the city council, to wit, on July 3, 1902, the council by the requisite number of all the aldermen duly and legally passed the said resolution over the mayor's veto; that thereafter at a regular meeting of the city council, to wit, on August 7, 1902, the city attorney submitted a report showing a settlement of the Nicholson suit in accordance with the directions of the council by the entry of judgment for the total amount claimed by Nicholson, and he, Nicholson, to pay all costs; that thereupon at said meeting, the council passed a resolution adopting and endorsing the said action of the city attorney; that thereupon it became the duty of said Riggins, as mayor, to cause to be issued, and himself to sign a check or draft upon the city treasurer for the full amount of said judgment in payment and satisfaction thereof; that the city secretary, in accordance with his duty, drew a check or draft upon the city treasurer for the amount due upon said judgment and presented the same to Riggins for his signature and issuance, and that Riggins refused to sign the same; that Riggins wilfully, persistently and deliberately continued thereafter to fail and refuse to cause to be issued and to sign a check or draft upon the treasurer of the city in payment of said judgment; that thereafter, under a proper proceeding in the said County Court of McLennan County, a mandamus order issued from said court, ordering the said Riggins to cause to be issued and to sign the

said check or draft upon the city treasurer for the payment of said indebtedness, and in obedience to the said order the said Riggins caused the said check to be issued and himself signed same. I find that the said Riggins as mayor deliberately, wilfully and persistently failed and refused to execute these several laws of the city of Waco.

"I conclude as a matter of law that the plaintiff Riggins said acts constituted official misconduct, for which he could lawfully be removed by the city council.

"Under charge No. 3 I find as follows: That on August 21, 1902, the city council at a regular session passed a resolution directing the payment to one J. P. Nelson of the sum of $118.25 for certain street paving done in said city; that plaintiff Riggins, as mayor of said city, in due form and in proper time, filed with the city secretary his objections to said resolution in a message to the city council, and on, to wit, August 28, 1902, the city council by the requisite two-thirds vote of all the aldermen duly and legally passed the said resolution over the mayor's veto, and that thereby the same became a law of the city; that it was the duty of Riggins, as mayor, to issue a draft or check for the said amount upon the city treasurer in payment of said amount due the said Nelson, and that this was the only manner in which it could be paid; that the city secretary made out such check in due form and presented the same to Riggins, and that Riggins refused to sign the same or cause the same to be issued, and that the said Riggins thereafter, as mayor, wilfully, persistently and deliberately failed and refused to cause the said draft or check to be issued and himself to sign the same, which was the only manner in which the said law could be executed, and that thereby the said Riggins wilfully, persistently and deliberately failed and refused to execute the said law of the city.

"I conclude as a matter of law that the said acts of the said Riggins constituted official misconduct for which he might be removed from office by the city council.

"Under charge No. 4, I find as follows: That the plaintiff Riggins, as mayor of said city issued drafts upon the treasurer of said city to one Miss Ella Johnson for specified sums of money each month, beginning with the month of January, 1902, and ending with the month of August, 1902, inclusive; that the same were issued to her on acount of salary as stenographer for the said Riggins as mayor; that the minutes of the city council at its regular meeting on April 24, 1902, show the following: 'The water committee submitted the following report, which was adopted:' 'We your water committee, to whom was referred that part of the mayor's message referring to the water plant for the city of Waco, would respectfully report: We recommend that the city council endorse what the mayor has stated about this proposition, namely: that the city council, through the taxpayers of Waco are thoroughly committed to public ownership of a water plant. We would therefore recommend that the mayor be instructed to secure in a definite way at the earliest possible date a proposition for the construction of a water plant for the city of Waco, and that such plans which may be necessary to carry out this proposition be put into active operation at once, and that the mayor be instructed to incur whatever may be the necessary expense to secure data, and a financial plan and proposition for this

purpose. Very respectfully submitted, Ben C. Richards, Chm., W. D. Wallace, A. Alexander, Water Com.' Plaintiff Riggins and the city secretary, R. B. Dickey, testified that the payments were made to Miss Johnson under the authority of this resolution. City attorney Allan D. Sanford testified that he was present at an informal meeting in the mayor's office of the members of the city council and the mayor on the afternoon previous to the action of the city council as above set out at its regular meeting that night, which was held for the purpose of discussing the water question, the city at that time having before it the question of construction of municipal waterworks; that it was determined at that meeting that it was necessary to proceed at once, and that probably the best source of supply was the Bosque River, where the plant could be established; that it would be necessary to secure right of way over the land between the city and the Bosque; that therefore it would be necessary to authorize the mayor to expend the money necessary in the employment of some person to secure options for the right of way; that in order not to let the public be advised, and particularly the Bell Water Company, of what the council was contemplating, a resolution should be introduced giving in general terms its object, but that the expenditure of money thereunder should be restricted to the purposes above named. There was no authority shown for the payment of the salary to the said stenographer than the resolution above named.

"I find under the above evidence that there was no authority for the payment of the salary to the stenographer previous to the date of the said resolution.

"I conclude as a matter of law that these acts of the said Riggins would not in themselves alone constitute any offense for which Riggins might be removed from office, but they are circumstances to show the motive which actuated Riggins in his acts under charges 1, 2 and 3, when taken in connection with all the other evidence, and also as one of a series of acts of like character, that is acts committed by him in his official capacity in disregard of his plain duty under the law. Also they are circumstances which might be considered by the council as tending to show that Riggins refused to execute the laws under charges 1, 2 and 3, simply because they were contrary to his wishes.

"Under charge No. 5, I find as follows: That on the 4th day of September, 1902, the city council passed a resolution relative to the water and light question in the city as follows: 'Be it resolved by the city council of the city of Waco: Section 1. That the mayor be and he is hereby authorized and directed to appoint by and with the consent of the city council five persons who shall be known and designated as a board of water and light commissioners who shall be property taxpayers of the city of Waco and residents thereof, one from each ward in said city, and a resident of the ward for which he is appointed. The mayor of said city shall be ex-officio a member of the said board of commissioners and president thereof, and shall be clothed with and exercise like authority with the other members thereof. Provided that the two aldermen from each ward in the said city shall, as soon as practicable after the passage of this resolution furnish to the mayor the names of

three persons, residents of their respective wards, and possessing the qualifications for a member of said board of commissioners as above named, and that the members of said board of commissioners to be appointed hereunder shall be selected from persons whose names are so furnished to the mayor. Section 2. That it shall be the duty of the said board of commissioners to proceed at once after their appointment and qualification hereunder to take into consideration and convass the question of a water supply for the city of Waco and the inhabitants thereof for the purpose of relieving the situation with regard to the said question as the same now presents itself to the citizens and the government of the said city, and to this end the said board is directed and required to ascertain three things: 1st. The cost of the erection and construction by the city of a municipal water works plant and system sufficient for all purposes for the said city and the inhabitants thereof, and the source of water supply therefor. 2d. The lowest price at which the Bell Water Company will sell its water works plant and system, and necessary property to the operation thereof to the city. 3d. The terms and conditions upon which the Bell Water Company will enter into a new contract with the city at the termination of its present contract for the furnishing of water to the city and its inhabitants. Section 3. The said board of commissioners is hereby authorized and empowered to enter into a contract with John W. Maxcy, the engineer heretofore selected for that purpose by the city council, for his services in securing such information as they may deem necessary to the proper discharge of their duties hereunder. The said board of commissioners are further authorized and empowered to call upon the officers of the said city for any information which they may deem necessary to the proper discharge of their duties hereunder, and it is hereby made the duty of any officer of said city to furnish any such information when so requested. Section 4. When the said board of commissioners shall have done and performed all the matters and things, and obtained all the information hereinabove named, they shall make full report thereof to the city council, with recommendations as to which course in their judgment will be the most advantageous for the city to pursue, whether the erection and construction of a municipal water works plant and system, the purchase by the city of the water works plant and system of the Bell Water Company, or the formation by the city of a new contract with the Bell Water Company at the termination of the present contract. Section 5. The said board of commissioners shall provide and prescribe such rules and regulations for their government, procedure and order of business other than herein provided as they may see fit, electing such officers out of their own body as they may desire, other than the president thereof, who shall be the mayor, as hereinbefore provided.'

"That on the 6th day of September, 1902, said plaintiff, Riggins, as mayor filed with the city council the following veto message, vetoing the said resolution: 'Waco, Texas, September 6, 1902. Honorable City Council of the city of Waco, Gentlemen: I herewith return to you with my disapproval and objection your resolution passed by the city council at the last session, relative to the water and light question. My objections are as follows: 1st. The city council is without authority

to delegate its power by a resolution. 2d. And if with the authority, the resolution carries with it no force, in that it is contradictory, vesting first in the executive officer of the city of Waco the power of naming five persons, who shall be known as the water commission; while under a provision, the city council seeks to retain the power of appointment to themselves. 3d. In other words, a commission is appointed with power and authority to do exactly what the city council is doing—nothing. 4th. In section 3 the resolution undertakes to direct the commission to contract with J. W. Maxcy, a civil engineer, when a hydraulic engineer is necessary if one should be needed. 5th. Said resolution does not indicate whether the members of the proposed commission shall be with or without a salary. 6th. The citizens of the city of Waco have clearly expressed their desire for municipal ownership of the water and light plants, and the resolution undertakes to direct the commission to obtain information as a basis for a new contract for water and light. This information the council either has, or can obtain without a commission.

"The reasons for the above objections may be briefly stated as follows: (1) An effort is made by this resolution to bring a complication and a division of responsibility in the selection of this commission; and in this to impede and hamper not only the work of the commission and the mayor. If the city council feels authorized to appoint the commission, let them do so, but the mayor will be compelled to decline to be a party to a proposition so remote from any promise to accomplish anything as is contemplated by your resolution. You take the responsibility if you feel authorized to be accountable for the acts of the commission which you seek to create; and the mayor declines to have his hands tied so that it will be impossible to proceed under the direction of your resolution. (2) A civil engineer is authorized to be employed to do what only a hydraulic engineer can do, and to redo the very things, at any additional expense to the tax payers, which have already been done, viz: to point out a source of supply, to make a general estimate of the cost, value the Bell Water Company's plant, etc. Besides a resolution can not make a contract, and authorize the expenditure of money, as your resolution contemplates. (3) Another reason is also apparent: this city council has had a proposition from the Bell Water Company. Recently it had a communication from the same source, asking for further conference. Why should this matter be placed into the hands of a commission, with no authority to do anything, which will only cause hindrance and consumption of time. (4) In your resolution the commission is given existence in name only; and, in my judgment, no good business man, capable of handling this matter, would be willing to accept a place in this commission, handicapped as he would be under the resolution. (5) No activity, organization or well-defined plan is given; and the commission being hampered and handicapped, without authority to act, is therefore weak and ineffective in every particular. Such a commission is not in accord with the plan and purpose outlined and endorsed by the people of Waco, its taxpayers and voters, and by the Democratic city convention, demanding a commission. Therefore, in conclusion, I desire to say that, if the city council desire such a commission, and I feel that they can lead this proposition to success, I say to you frankly that the executive must decline to serve upon the same,

or to appoint them in the manner prescribed by you; and the mayor as executive steps aside and says to the council: appoint the commission if you desire, as contemplated by your resolution; take the responsibility and account to the people of Waco. Take the power and law into your own hands and proceed. The only thing that I ask is that you act in the interest of the public *promptly*. Very respectfully, J. W. Riggins, Mayor.' I conclude as a matter of law that this act alone would not be sufficient to constitute an offense for which Riggins might be removed from office, but the same is stated here for the same purpose, and is considered for the same purpose, stated in my conclusions relative to the facts found under charge No. 4.

"Under charge No. 6, I find as follows: That some time during the month of May, 1902, plaintiff, Riggins, while mayor of said city, engaged in the employ of the Anti-Prohibition party of the State for the compensation of $400 per month, and continued therein from then until the time for the impeachment trial, to wit: a period of about four months; that in the State during that period there were held in various counties a great number of local option elections, of which, as manager of the Anti-Prohibition party Riggins had control; that to his work he gave sufficient time to keep one stenographer busy all of his time and another stenographer busy half of the time, besides the various details attended to by himself; that Riggins visited a number of these counties for the purpose of making campaign speeches, and otherwise looking after the campaign, thereby frequently absenting himself from the city; that Riggins gave to this business and employment nearly, if not quite, half of his time.

"I conclude as a matter of law that this act alone would not constitute any offense for which Riggins might be removed from office, but the same is stated here and is considered by me for the same purpose as stated in my conclusion upon the facts found under charge No. 4.

"Under charge No. 7, I find as follows: That during the spring and summer of 1902 plaintiff, Riggins, made use of his authority and power as mayor over what is commonly known as the public city hall in the city of Waco, being the municipal government building in said city, and converted a said portion thereof into headquarters for himself in the capacity of his employment by the Anti-Prohibition party as State campaign manager of said party; that he did so without the consent of the municipal government or the citizens of the said city, and without any authority whatever.

"I conclude as a matter of law that this act alone would not constitute any offense for which Riggins might be removed from office, but the same is stated here and is considered by me for the same purpose as stated in my conclusion upon the facts found under charge No. 4.

"Under charge No. 8, I find as follows: That during the spring and summer of the year 1902, for the period of about four months, the plaintiff Riggins made use of the influence and power and authority vesting in him as mayor of the city of Waco for the purpose of furthering and enhancing the political power and influence of what is known as the Anti-Prohibition party or movement in the State of Texas as State campaign manager of said party. I find, however, that there was no evidence introduced before the city council showing that his said acts

brought the said city or the government or the inhabitants thereof, into disgrace, ridicule, hatred and contempt; and I conclude as a matter of law that, even if his said acts should have brought the said city, the government and the inhabitants thereof into disgrace, ridicule, hatred and contempt, the same would not constitute any offense for which he might be removed from office.

"Under charge No. 9, I find as follows: That during the latter part of the month of July, and during the month of August, 1902, dust accummulated and formed upon a great number of streets of the city of Waco to such an extent as to destroy the comfort and become a menace to the health and life of the inhabitants of said city, and to such an extent as to retard the growth and progress of said city; that on August 28, 1902, at the regular meeting of the city council, a committee of representative citizens of the city appeared before the council and asked relief from the dust; that thereupon the council passed a resolution asking the mayor to borrow for the city at once $6,500, to give the citizens relief; that the said resolution thereby became a law of the city; that it was the duty of the said Riggins as mayor, to execute the same; that Riggins ignored the same and made no effort to execute it, and wilfully, persistently and deliberately failed to execute the said law, although the dust nuisance cotinued for a long period thereafter wholly unabated. That said facts do not of themselves constitute sufficient cause for removal but should be considered in connection with all the other evidence in the case, in considering the motive of the plaintiff Riggins in connection with the charges designated in numbers 1, 2 and 3, and they are considered by the court for that purpose only.

"Upon the foregoing findings of fact, I conclude as follows:

"1. That plaintiff Riggins, in his official capacity as mayor committed a series of acts covering a period of more than two years which show conclusively a disregard of his plain duty under the law and wilful failure and refusal to do his official duty, and a wilful and persistent attempt to carry out his own will and wishes in defiance of and in opposition to the laws of the city which constituted official misconduct for which the council were warranted in removing him from office.

"2. That the acts of Riggins complained of under charges 1, 2 and 3, if wilfully done, would constitute official misconduct for which the council might lawfully remove him; that the uncontradicted evidence that they were committed, and that there was evidence introduced before the council from which they could conclude that these acts were wilfully committed; that the city council found that they were wilfully committed and removed him from office, and that such action of the council in so removing him is final and conclusive and can not be disturbed by any court.

"3. I therefore conclude that plaintiff Riggins was lawfully removed from the office as mayor of the city of Waco, and that he can not recover the salary of the said office from the time of such removal."

We approve the findings of fact and conclusions of law of the trial court. This, in effect, disposes of all the assignments of errors contained in appellant's brief, except one to the effect that the trial court, in reaching its conclusion, should not have considered for any purpose

the facts found by the court, as stated in the fourth, fifth, sixth, seventh, eighth and ninth findings. There is no assignment objecting to the admission of these facts in evidence, but the complaint is practically to the effect that they were collateral matters, and should not have been considered for any purpose by the trial court. If we were inclined to this view, still we think that the first three findings of fact would be sufficient to have justified the action of the council in removing Riggins; but, however, we are inclined to accept the view of the trial court upon this question, and think that they were proper matters to be considered by the court for the reasons stated by him in the findings.

With this view of the case, we deem it unnecessary to pass upon the questions raised by the appellee in its cross assignments of errors. The sufficiency of the evidence before the council to authorize the removal of Riggins was admitted by this court in the case of Riggins v. Richards, 79 S. W. Rep., 84. It is true that we are informed that the Supreme Court in that case granted a writ of error, on the ground that in its opinion the evidence before the council in the record in that case was not sufficient upon which to base the judgment of removal from office. We can not regard this as a judicial decision of the question by the Supreme Court. Therefore, we feel free to act upon our own judgment, independent of any expressions of the Supreme Court in granting the writ of error in the former case.

We have carefully considered the facts and have reached the deliberate conclusion that the council had before it evidence to justify its adjudication of the question that Riggins was either incompetent or guilty of such official misconduct, or both, as would justify his removal. The expression incompetency is not used in the sense that Riggins was ignorant of the duties of his office, and did not have ability and intelligence sufficient to perform these duties; but the word is used to convey the idea that in the exercise of the supposed functions of his office, he assumed the authority to defy the council and to overrule and nullify its deliberate decrees, rendered when exercising its lawful authority concerning matters that were confided solely to its adjudication. There is some evidence in the record in the nature of admissions from Riggins himself, to the effect that he did not feel that he was bound by the action of the legislative body of the city when exercised in opposition to his views.

Whenever the law-making power of a city, or, for that matter, any of the higher political subdivisions of the government, undertakes, within its constitutional limits, to exercise its authority to pass laws, no officer charged with the duty of observing and executing those laws has the right to disobey the legislative will merely upon the ground that the execution of the law does not suit his convenience or his peculiar ideas as to what the law should or should not be. And an officer who confesses and admits that in such a case obedience lies within his discretion, or that the dictates of his conscience will not admit of its observance, is incompetent, in the sense we have stated, to be entrusted with the performance of executive duties, which have been legally and directly imposed upon him.

We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.