**McNATT et al. v. LAWTHER, Mayor, et al.
(No. 1633.)**

(Court of Civil Appeals of Texas. Amarillo.
June 9, 1920.)

1. **Municipal corporations** ⊜═198(4) — **Extent
of reviewing power of courts on removal of
city firemen by commissioners.**

Where city commissioners of Dallas removed firemen under a provision of the charter
providing that firemen could hold their positions during good behavior, and should not be
removed except for such cause as, in the opinion of the board of commissioners, rendered
them unfit, after an opportunity to be heard,
the extent of the power of the courts is to
inquire whether or not the commissioners exceeded their lawful authority so that their action may be treated as a nullity; and, if there
might be fairly said to be any ground for difference of opinion as to whether the acts charged would be a sufficient cause, the courts cannot interfere.

2. **Municipal corporations** ⊜═198(2)—**Statute
does not prevent city from discharging firemen belonging to labor union.**

Rev. St. art. 5244, merely announces that
there is no prohibition of law against trade
unions, and does not seek to regulate the attitude of the employer toward the organization
of unions among his employés, and has no
controlling effect in an action for reinstatement
by discharged city firemen who violated rules
and regulations of the fire department in becoming members of a labor union, in view of
article 5246.

3. **Municipal corporations** ⊜═198(2) — **Discharge of city firemen joining labor union not
arbitrary or capricious.**

It cannot be said that the action of the city
commissioners of the city of Dallas in removing city firemen joining a labor union in violation of a rule of the department was arbitrary
or capricious.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by N. J. McNatt and others against
Joe E. Lawther and others, as mayor and
commissioners of the city of Dallas, for a
mandamus to require the defendants to reinstate the plaintiffs as firemen. Judgment for
defendants, and plaintiffs appeal. Affirmed.

J. C. Patton, of Dallas, for appellants.

Jas. J. Collins, W. S. Bramlett, and E.
Dougherty, all of Dallas, for appellees.

BOYCE, J.   N. J. McNatt and others
brought this suit against Joe E. Lawther and
others, as mayor and commissioners of the
city of Dallas, for a mandamus, to require
the defendants to reinstate the plaintiffs as
firemen in the employ of the said city. The
court sustained a general demurrer to the petition, so that it becomes necessary to state
in some detail the contents of said pleading.

The allegations of such petition were, in substance:   That the plaintiffs had been, for
some time prior to the acts of the defendants
complained of, employed by the city of Dallas
as firemen, performing the duties and receiving the pay incident to such employment.
That at such time the charter of the said city
contained the following provision:

"All policemen and firemen of the city of
Dallas shall hold their positions during good
behavior and shall not be removed from same
except for such cause as in the opinion of the
board of commissioners renders them unfit to
remain in the service of the city and after
written notice, giving the grounds for such
discharge or removal, and an opportunity to
be heard on such charges or reasons."

That prior to January 9, 1918, the plaintiffs and other firemen of the city became
members of a local union, affiliated with the
American Federation of Labor.   That the
said firemen in so doing associated themselves together in the form of a trades union,
for the purpose of protecting themselves in
their personal work, personal labor, and personal service in their said pursuits, and employment, and that the object of said union
was for such purpose and no other.   That
the plaintiffs were skillful and loyal in their
service, and remained in good behavior in
said employment, and no complaint was or
could be made against them as such employés of said city.   That on the said 9th
day of January, 1918, the defendants, as
mayor and commissioners of said city, demanded of the said firemen that they immediately withdraw from said union upon penalty of being discharged from their respective employments.   That the plaintiffs refused to withdraw from said union, and the
defendants thereupon declared them to be
suspended from their said positions for said
reason.   That thereafter, about the 24th
day of January, 1918, plaintiffs presented to
the said mayor and commissioners a petition
for reinstatement, alleging that they had
been wrongfully discharged.   That in said
petition they prayed in the alternative that
the defendants cause to be filed against the
plaintiffs a formal charge in accordance with
the provisions of the charter of the said city,
giving the reasons for their said dismissal
or suspension, and that plaintiffs be granted
a hearing thereon.   That in pursuance to
said petition charges were filed by the chief
of the fire department, before the mayor and
commissioners.   That in the said charge it
was alleged that the plaintiffs had knowingly
and willfully violated the rules and regulations of the Dallas fire department, and had
placed themselves in a position and state of
insubordination to their superiors of said department and to the legally constituted authorities of said city, in that the said firemen, "with the purpose and intent to disre-

⊜═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

gard the rules and regulations of said department and to disobey their superior officers, and to create, stir up, and foment strife, contention, disorganization, and disintegration, and insubordination in said department, did agitate, aid, and abet the organization of a union in the Dallas fire department, the same to be under and become affiliated with and under the government and control of the American Federation of Labor, and did ally themselves with said union, and, when requested by said mayor and commissioners of said city to withdraw from said union and desist from such agitation and refrain from aiding and abetting the organization of said union, did refuse to do so, and when called upon by the officers of said city to declare their absolute and unqualified allegiance and loyalty to the city of Dallas and its fire department, did refuse to make such declaration, all of which rendered them wholly unfit to be and remain in the service of the city in said department." It is further alleged in the said petition that thereafter, on the 28th day of January, 1918, hearing was had on said charge, before the mayor and said commissioners, who thereupon ordered that said charges be sustained, and said dismissal of defendants be affirmed and ratified; that the plaintiffs were acting lawfully in the organization of said union, and were specifically allowed to do so under the provisions of article 5244 of the Revised Statutes of the state, and that the charge filed against them was no charge in contemplation of law, and did not show any sufficient ground for such removal, and could not justify the action of said commissioners in dismissing the plaintiffs from the service of the city. Based on these allegations plaintiffs prayed for a writ of mandamus, requiring the defendants to reinstate plaintiffs as firemen of said city, and to allow them to perform the duties and enjoy the emolument and privileges of said positions, without requiring plaintiffs to withdraw from said union or to make any pledge not to join any union.

[1] The provision of the charter referred to confers upon the board of commissioners of the city the authority to pass upon the sufficiency of the cause for removal, and the first matter to be considered is in reference to the power of the court to review the action of such board, and, if any such power exists, the rules under which it is to be exercised. We take it that the extent of the power of the courts in such matter has been definitely determined by the decisions in the cases of Riggins v. Richards et al., 79 S. W. 84; Id., 97 Tex. 526, 80 S. W. 524; Riggins v. City of Waco, 40 Tex. Civ. App. 569, 90 S. W. 657; Id., 100 Tex. 32, 93 S. W. 426. These cases grew out of the removal of Riggins from the office of mayor of the city of Waco by the city council of said city. Riggins first brought suit for mandamus to be restored to the office, and the first two cases dealt with this phase of the case. In the first report of the case in 79 S. W. 84, the Court of Civil Appeals made this statement as to the law:

"The general rule is that where the duty to be performed is judicial, or involves the exercise of discretion upon the part of the tribunal or officer, and no appeal is permitted by law, the courts will not undertake, by mandamus or otherwise, to control or review the action of such tribunal or officer. * * * However, some courts hold that, if judgment or discretion has been abused and exercised in an arbitrary or capricious manner, the injured party may seek relief by mandamus."

The first part of the proposition stated probably did not meet the approval of the Supreme Court, as was shown by the subsequent proceedings. The Supreme Court granted a writ of error in that case, but the term of office expired before the case was heard, and it was dismissed. Riggins then sued the city for his salary, and the case was again before the Supreme Court on application for writ of error and that court said in part, in refusing the application:

"The application for the writ of error has received very careful attention, with the result that the court has reached the conclusion that it cannot interfere with or disregard the action of the city council whereby plaintiff in error was removed from office. The power of removal is vested in that body by law, and no power of review, merely, is given to the courts. The law requiring that the removal should be for specified causes and after a hearing, the council was not empowered to deprive the mayor of his office arbitrarily or capriciously; and the courts, as incidental to their power to determine and enforce his right to the office, may inquire whether or not the council exceeded its lawful authority in the attempted removal, so that its action may be treated as a nullity, but beyond this have no rightful power over the subject. The most that could be asserted in favor of the power of the courts is that they may inquire whether or not charges were duly preferred, a hearing had, and evidence adduced tending to sustain them."

The petition in the case before us shows that a hearing was had on the charges made against the plaintiffs. It does not disclose what evidence was offered on the hearing, and it will, of course, be presumed that the evidence supported the charge. So that the only question for us to determine is whether the charge itself, if sustained, was sufficient to authorize the removal. If there might be fairly said to be any ground for difference of opinion as to whether the acts charged would be sufficient cause within the provisions of the charter, then the courts could not interfere with the action of the board of commissioners. If there were no room for difference of opinion, and the charges preferred were clearly insufficient, then it might be concluded that the board acted arbitrarily or

capriciously, and their action would not protect the city in this suit. We now pass to the consideration of such phase of the case.

[2, 3] It is appellants' contention that their action in becoming members of the union was lawful, under the express provisions of article 5244 of the Revised Statutes, and could not form the basis of any charge for removal from their positions. This article reads as follows:

"It shall be lawful for any and all persons engaged in any kind of work or labor, manual or mental, or both," to associate themselves together and form trades unions and other organizations for the purpose of protecting themselves in their personal work, personal labor, and personal service, in their respective 'pursuits and employments."

It was probably the purpose of this legislation to make it clear that the early English decisions, which held labor unions under certain circumstances to be unlawful, and our own laws against trusts and combinations in restraint of trade, did not apply to labor unions. The act merely announced that there was no prohibition of law against such unions. But, on the other hand, it did not seek to regulate the attitude of the employer toward the organization of unions among his employés, and we take it that, if the employer should see fit to prohibit his employés from becoming members of such "trades unions" on pain of discharge in case of violation of such prohibition, such act would not be in violation of this law. Martin's Modern Law of Labor Unions, § 258. This would have been plain, we think, without any statement to such effect in the law, but the act itself declares that—

"Nothing herein contained shall be held to interfere with the terms and conditions of private contract with regard to the time of service, or other stipulations between employers and employés." R. S. art. 5246.

If the act had sought to impose any restrictions upon the freedom of the employer in such matter, it would probably be held unconstitutional. Coppage v. Kansas, 236 U. S. 1, 35 Sup. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; Adair v. United States, 208 U. S. 161, 28 Sup. Ct. 277, 52 L. Ed. 436, and note, 13 Ann. Cas. 764; R. C. L. vol. 16, pp. 480, 481; Labatt on Master and Servant (2d Ed.) § 2862; Martin's Modern Law of Labor Unions, § 259 et seq. So we conclude that article 5244 has 'no controlling effect in the decision of the case, and we must return to the question as to whether the courts may say that the rules and regulations of the fire department referred to in the charge preferred against the firemen, prohibiting firemen of the city from becoming members of such labor organization, and the enforcement thereof, are purely arbitrary or capricious. By way of parenthesis we may say that the court sustained the demurrer in this case after evidence had been introduced on hearing before him, and such evidence showed that there was at such time in force in the city of Dallas a city ordinance which provided that—

"Hereafter no organization or association shall be organized among the members of the fire department unless the same first receives the approval of the chief of the fire department and police and fire commissioner; and if at any time after the creation of any such organization or association it should appear to the chief of the fire department or police and fire commissioner that such organization or association is detrimental to the duties and service required to be performed by the members of the fire department, it shall be the duty of the members composing any such organization, upon request from the chief of the fire department and police and fire commissioner, to discontinue, and dissolve any such organization."

We refer to this ordinance as merely explaining the reference in the charge to the rule and regulations of the fire department, which it was charged the plaintiffs had violated, and while the petition itself did not refer to such ordinance, it can be fairly inferred from the allegations of the petition, which set out the charge preferred against the firemen, that such charge was made in view of such or similar rules, duly promulgated for the regulation of the fire department. Returning to the question we are considering. The Supreme Court of the United States said in the case of Coppage v. Kansas, supra, that—

"It cannot be judicially declared that membership in such an organization [a labor union] has no relation to a member's duty to his employer; and therefore, if freedom of contract is to be preserved, the employer must be left at liberty to decide for himself whether such membership by his employé is consistent with the satisfactory performance of the duties of the employment."

The Supreme Court of Wisconsin, in the case of State v. Kreutzberg, 114 Wis. 530, 90 N. W. 1098, 58 L. R. A. 748, 91 Am. St. Rep. 934, said:

"Without enlarging upon or debating the relative advantages or disadvantages of the labor union, either to its members or to the community at large, it is axiomatic that an employer cannot have undivided fidelity, loyalty, and devotion to his interests from an employé who has given to an association right to control his conduct. He may, by its decisions, be required to limit the amount of his daily product; he may be restrained from teaching his art to others; he may be forbidden to work in association with other men whose service the employer desires; he may not be at liberty to work with such materials or products as the employer deems essential to his success. In all these respects he may be disabled from the full degree of usefulness attributable to the same abilities in another who

had not yielded up to an association any right to restrain his freedom of will and in his employer's behalf according to the latter's wishes. Such considerations an employer has a right to deem valid reasons for preferring not to jeopardize his success by employing members of organizations. A man who is by agreement, or otherwise, shackled in his faculties—even his freedom of will—may well be considered less useful or less desirable by some employers than if free and untrammeled."

The board of commissioners of the city of Dallas had the interest of the public, as well as the employés of the city, to consider. In addition to the considerations stated in the quotations above referred to, the commissioners may have taken into consideration the effect of the increased probability of strikes by the policemen or firemen of the city, as a body, if such employés were permitted to become members of an organization which might bind them to act as a body in such matters. The dire consequences of such a strike has been exemplified in the comparatively recent strike of the policemen of the city of Boston. The adoption of the ordinance referred to or similar rules and regulations, may have been the result of a purpose to minimize, as far as possible, the probability of some such calamity in the city of Dallas. We are not called upon to express an opinion as to whether such rules were wise or not. We do conclude, however, that we cannot say that the adoption and enforcement thereof by the constituted authorities of the city was arbitrary or capricious.

We think the court correctly sustained the demurrer to the petition, and its judgment will be affirmed.