## J. F. ROCHELLE v. W. P. LANE, COMPTROLLER.

### No. 2420. Decided June 12 and 27, 1912.

**1.—Sheriff—Allowance of Account—Comptroller.**

The account of a sheriff for costs in felony cases, presented in accordance with law and duly allowed by the district judge, is not subject to revision and rejection in whole or in part by the Comptroller. (P. 354.)

**2.—Same.**

Where the sheriff's bill for costs is made out in accordance with law (Rev. Stats., art. 1132) its approval and entry on the minutes of the court by the district judge (Rev. Stats., art 1113) constitutes a judicial act. The Comptroller, when presented with a certified copy of such record, is not given authority by Rev. Stats., art. 1134, directing him to carefully examine same and if correct to draw his warrant for its payment, to determine upon the justice of the different items and reject or approve them, his means of examination and consequent duty being confined to the copy of the record. Nor, it seems, could such judicial power be conferred on an administrative officer, under the division of the powers of government by our Constitution (Art. 2, sec. 1). (Pp. 351-356.)

**3.—Same—Executive Construction—Attorney-General.**

Long disregard by executive officers of the constitutional limit of their powers does not sanction its continuance; and the opinions of the Attorney-General sanctioning it are not precedents for the government of the courts. (P. 355.)

Original application by Rochelle to the Supreme Court for writ of mandamus against Lane as Comptroller.

*Rodgers & Dorrough* for relator.

*Jewell P. Lightfoot,* Attorney-General, and *C. E. Mead,* Assistant, for respondent.

Mr. Chief Justice Brown delivered the opinion of the court:

Relator was during the time in which the facts herein stated transpired and now is the duly elected and qualified sheriff of Bowie county, and respondent was during said time and now is the duly elected and qualified Comptroller of the State of Texas.

Relator filed a petition for mandamus against respondent alleging that, ''on the —— day of February, A. D. 1911, the relator as sheriff aforesaid, in compliance with the laws relating thereto, did make out a bill or account of the costs claimed to be due him by the State in the felony cases tried at the November term, A. D. 1910, of the District Court in and for said Bowie county, showing the style and number of cases in which the costs are claimed to have accrued; the offenses charged against the defendants; the term of the court at which the cases were disposed of; the disposition of the cases; the name and number of defendants, and if more than one, whether they were tried jointly or separately; where each defendant was arrested or witness was served, stating the county in which the service was made, giving distance and direction from county seat of county in which process was served and mileage therefor charged for distance by the most direct and practicable route whence such process issued to the place of service, and such other information and data provided by law to be shown in said account.

''That said account during said term of court was duly presented to the district judge, presiding at said term of court, who after examining the same carefully and inquiring into the correctness thereof, approved the same; and such bill with the action of the judge thereon was duly entered on the minutes of said court, and a certified copy thereof with the action of the judge thereon duly transmitted and presented to said Respondent on the —— day of March, A. D., 1911.''

Of each of said accounts it is alleged:

''That when said account or bill of costs was so presented to said presiding judge, he set the same down for hearing on October 14, 1911, and on said date, and prior thereto, did examine the same carefully and inquire into the correctness thereof and thereupon approve the bill and account of the costs due to this relator for said term of court, to be paid by the State in the sum of Four Thousand, Four Hundred Twenty-two and 45/100 ($4422.45) Dollars; that said account of costs was duly entered in the minutes of the District Court of Bowie County, Texas, as appears from certificate of the clerk thereof annexed to the said account so presented for payment as hereinafter set forth.''

It is also alleged that the clerk of the District Court of Bowie

County made a certified copy of the record of each account according to law and transmitted such copy to the comptroller, as directed by the law of the State, which were received by respondent and are now on file in his office.

It is alleged that the respondent upon examination of the accounts refused to issue warrants for certain amounts of each account. The sum of each is immaterial to the decision of this case. The allegations are full and present clearly the issue of the respondent's duty in regard to said accounts.

The respondent has not submitted to this court any facts from which the correctness of his action in refusing the warrants may be judged. The answer assumes that the law empowers the comptroller to review the action of the district judge, and, as he alleges no facts upon which his own action is based, the only issue presented is that the respondent is by law empowered to review and annul the judgment of the district judge without regard to the facts, and that his action in so doing is not subject to review. This is a correct presentation of the real issue, for if the law permits the comptroller to go into the facts to determine the correctness of the judgment of the district judge, or if we were required to examine the facts to determine the correctness of the comptroller's action, this court would have no jurisdiction to try the issue. We conclude that the only question for our decision is, had the respondent the authority to review the accounts approved by the Honorable P. A. Turner, Judge of the Fifth Judicial District? If he had the power, the mandamus must be refused; if he had it not, the writ will be granted.

The articles of the Code of Criminal Procedure, which must control the decision of this case, are:

"Art. 1132.    (1087)    Officer shall make out cost bill, and what it shall show. Before the close of each term of the District Court, the district or county attorney, sheriff and clerk of said court shall each make out a bill or account of the costs claimed to be due them by the State, respectively, in the felony cases tried at that term; the bill or account shall show:

"1.    The style and number of cases in which the costs are claimed to have accrued.

"2.    The offense charged against the defendant.

"3.    The term of the court at which the case was disposed of.

"4.    The disposition of the case, and that the case was finally disposed of, and no appeal taken.

"5.    The name and number of defendants; and, if more than one, whether they were tried jointly or separately.

"6.    Where each defendant was arrested or witness served, stating the county in which the service was made, giving distance and direction from county seat of county in which the process is served; and mileage shall be charged for distance by the most direct and practicable route from the court whence such process issued to the place of service.

"7.    In allowing mileage, the judge shall ascertain whether the process was served on one or more of the parties named therein on the same tour, and shall allow mileage only for the number of miles

actually traveled, and then only for the journey made at the time the service was perfected.

"8. The court shall inquire whether there have been several prosecutions for an offense or transactions that is but one offense in law; and, if there is more than one prosecution for the same transaction, or a portion thereof, that could have been combined in one indictment against the same defendant, the judge shall allow fees to sheriffs, clerks and district and county attorneys in but one prosecution.

"9. Where the defendants in a case have severed on the trial, the judge shall not allow the charges for service of process and mileage to be duplicated in each case as tried; but only such additional fees shall be allowed as are caused by the severance."

It is important to observe the particularity with which the facts must be stated. If the test is applied according to these provisions, the correctness and justness of the claim must be passed upon by the judge, whose duty is prescribed as follows:

"Art. 1133. (1088) Duty of Judge to Examine Bill, etc.—It shall be the duty of the district judge, when any such bill is presented to him, to examine the same carefully, and to inquire into the correctness thereof, and approve the same, in whole or in part, or to disapprove the entire bill, as the facts and law may require; and such bill, with the action of the judge thereon, shall be entered on the minutes of said court; and immediately on the rising of said court, it shall be the duty of the clerk thereof to make a certified copy from the minutes of said court of said bill, and the action of the judge thereon, and transmit the same by mail, in registered letter, to the comptroller of public accounts," etc.

To determine the character of the action of the judge on the accounts of the sheriff, we must look to the law that prescribed the thing to be done. Was the act of approval or disapproval judicial or ministerial? It relates only to costs which have accrued in felony cases tried in the court over which the judge presided, which were tried during the same term of the court at which the judgment was entered. The officer was required to make a full statement of the facts which authorized the approval. The report was equal in its statement of facts to the allegations of a petition in a regular action, and sought a judgment against the State upon the facts and the law. The duty of the judge was to inquire into the correctness of each item of the claim; also to inquire into the truth of the statements made by the sheriff, and to approve or disapprove the bill in whole or in part. The evidence was submitted which the judge weighed, thus passing upon the justness and legality of the claim, and the conclusions of the judge were entered upon the minutes of his court. It was a judgment. The examination of these accounts was performed by a court of competent jurisdiction at a regular session and in a proceeding prescribed by statute, upon evidence furnished by the sheriff and a decision made upon the issues raised; a judgment was regularly entered upon the minutes during a regular term of court. The facts fulfilled the most rigid definition of a judicial act. Houston T. & B. R. R. Co. v. Randolph, 24 Texas, 317; State v. Hovey, 118

Ind., 350 (10 Am. St., 143), the last case reviews the subject extensively; Auditorial Board v. Hendricks, 20 Texas, 60.

The law prescribed that to secure payment of the judgment the clerk of the court should transmit a certified copy of the record to the comptroller, and "it shall be the duty of the comptroller upon the receipt of such claim and certified copy of the minutes of the said court to closely and carefully examine the same and if correct to draw his warrant," etc. It is evident that the words, "the same," refer to the certified copy from the minutes of the court. What is the scope of the examination to be made by the comptroller. His counsel claim that he can determine upon the justice of the different items and reject or approve them. The character of the examination must be defined by the means which the law furnishes to enable the officer to perform the duty enjoined. Looking to the statute we find that all of the powers of a court are at the command of the district judge and he has positive direction to test the legality and justice of each item which he must examine. Thus the court is fully equipped for the work.

The comptroller has no connection with the claim until it has been adjudicated by the court, and is furnished no evidence except the copy of the judgment, and has no power to secure evidence. It cannot be denied that his means of examination is confined to the copy of the record, therefore, his examination must be confined to that as a report. The correctness which is to be ascertained must be, of that record and extends only to the manner in which the clerk has performed his duty.

Indeed, as we have seen the comptroller has no facts nor power to obtain facts upon which to act otherwise than to test the work of the clerk. The extraordinary assertion is made that a claim which has been proved and adjudged in a court to be correct may be set aside by the comptroller upon his own instinct of right, without evidence. Such a claim is too absurd for discussion. If the Legislature intended to confer such power upon the comptroller it would have violated Section 1 of Article II of the Constitution, which reads:

"The powers of the government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another; and no person or collection of persons being of one of these departments shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

The comptroller is an executive officer and cannot exercise judicial power. The judgment being a judicial act cannot be reviewed by an executive officer. Railroad Co. v. Randolph, 24 Texas, 336.

In Houston T. & B. Ry. Co. v. Randolph, cited above, Judge Roberts, treating of a like question, said: "It (the Constitution copied above) contemplates that the persons employed in each department, will be wise enough, and honest enough, to discharge the duties intrusted to them, without the aid or interference of the others."

It is presumed that the district judge, the sheriff and the

comptroller each is honest and competent to attend to the business intrusted to him, but there is no presumption that the comptroller is more honest than the judge and sheriff, nor that he is more competent than they to attend to the business which the people have committed to them.

The fact that seventeen hundred witnesses were summoned in seventeen cases is not evidence of fraud on the part of the sheriff and judge. The law permits the parties to sue out the process and the sheriff was compelled by law to serve it. However zealous for the public good the respondent may be, he has no right to arbitrarily refuse a warrant for such claim as this; he must confine his action to the limits prescribed for him by law.

It is urged that previous comptrollers have exercised the same power for many years. If that be true it is time that it should be known in Texas that a disregard of the Constitution by the usurpation of power on the part of officials is not sanctified by its long continuance, and that each officer should confine his acts to the limits of his power. We would not disparage the zeal of respondent nor challenge the honesty of his purpose, but the superiority of the Constitution must be sustained until the sovereign voters shall change it.

It is ordered that the writ of mandamus prayed for issue, directed to respondent, and that relator recover all costs.

Opinion filed June 12, 1912.


### ON MOTION FOR REHEARING.

Under ordinary circumstances we would not reply to the remarkable assumptions of law and fact which the Assistant Attorney General has embraced in the motion for rehearing. We are content with the decision of the case, but the Assistant Attorney General has made such remarkable assertions that we think it proper to reply to some of them.

The opinion of J. S. Hogg, as Attorney General, has been invoked under circumstances which give to the act a peculiar significance. We give the same weight to the opinion of Attorney General Hogg that we would to that of any other Attorney General of equal ability, but, as authority, that opinion ranks no higher than the opinion of any other good lawyer. We have read the opinion and find that the constitutional question was not in his mind.

It is also stated that other comptrollers have done as Lane did in this instance. We repeat that a violation of the Constitution cannot be sanctified by frequent repetitions and such acts do not furnish a guide for a court that has regard for the Constitution of the State. It would be legitimate to look to those matters as showing that the comptroller acted in the belief that he had the authority of law for what he did if his motives were material, but they were not in this case. There is nothing in the facts alleged nor in the opinion of this court that justifies the imputation of intentional wrong to the comptroller. It is always to be regretted that such matters should be injected into a court trial.

Counsel quotes from the opinion thus: "The fact that seventeen hundred witnesses were summoned in seventeen cases is not evidence of fraud on the part of the sheriff and judge. The law permitted the parties to sue out the process and the sheriff was compelled by law to serve it. However zealous for the public good the respondent may be, he has no right to arbitrarily refuse a warrant for such claim as this; he must confine his action to the limits prescribed for him by law." Then asks: "Under the circumstances we are at a loss to know where the court found out that seventeen hundred witnesses were summoned in seventeen cases, and that this is no evidence of fraud on the part of the sheriff and judge." We answer that we got it from the attorney himself, when he held the transcript above his head and said, in substance, this shows that there were seventeen hundred witnesses summoned in seventeen cases at a cost of $850.00. We did not examine the transcript, but assumed that the attorney was correct and we simply illustrate the legal point by using the statement.

The charges of fraud against officers of the State and the prediction of the evil results of this decision belong to a class of irrelevant declamation which does not deserve notice.

The power to correct the evil, if it exists, resides in the Legislature and not in this court, who will not disregard their obligations for any reason. The Legislature must change the law if it be changed.

In conclusion we will say that we believe that the interests of the State are as safe with the district judges as they would be with any executive officer. The judges have the means of careful investigation and each judge has but one sheriff's account to deal with at a time, while the comptroller, if intrusted with it, would have to handle more than two hundred accounts scattered all over the State. All of this cry about the great loss to the State is, we believe, without foundation and is poor material for a member of the Attorney General's staff to use in argument on strictly a legal question in this court, who have a right to expect aid from that department.

Opinion filed June 12, 1912.