## McDANIEL v. STATE.   (No. 3576.)

Court of Civil Appeals of Texas.   Texarkana.
June 27, 1928.

Rehearing Denied July 5, 1928.

J. A. Dial, of Sulphur Springs, and C. C. McKinney, of Cooper, for appellant.

Ben D. Clower, of Cooper, and L. L. James, of Greenville, for the State.

HODGES, J.   This appeal is from a judgment removing the appellant from the office of sheriff on charges of official misconduct. Appellant was elected sheriff of Delta county for a second time at the general election in 1926. In August, 1927, Ben. D. Clower, county attorney of Delta county, filed a petition in the name of the state of Texas, charging the appellant with having unlawfully collected from the state fees in felony cases which he was not entitled to charge and collect. The amended petition, on which the case was tried, alleges, in substance, that, in making

out his accounts against the state for fees in felony cases, the appellant charged and collected mileage on warrants and other writs when no mileage was due, and collected excessive mileage where mileage was due; that he charged for summoning witnesses when such witnesses had not been summoned, and for approving bonds when no bonds had been made. A large number of cases in which it is alleged unlawful fees and mileage were collected are set out in detail.

Delta county is situated in two judicial districts, the Eighth and the Sixty-Second. The fees were charged for serving criminal processes issued in cases pending in the Eighth judicial district. The acounts were presented to and approved by the judge of that district. This suit was filed in the Sixty-Second judicial district.

In his answer, appellant excepted generally and specially to the amended original petition. After a general denial, he specially pleaded the action of the judge of the Eighth judicial district in approving his accounts as res adjudicata of the issues presented in this proceeding, and a bar to the prosecution of this suit. It appears from the record that by agreement the case was transferred to Hunt county, which is also situated in the Sixty-Second judicial district. A trial in that county resulted in a verdict against the appellant, upon which a judgment was entered removing him from office.

The evidence shows that two accounts against the state were presented by the appellant during the year 1927—one for fees due at the end of the January term of the district court, and the other for fees due at the end of the June term. The account for the January term contains eleven reported cases in which it is alleged that illegal fees were claimed and collected. The June account contains eighteen such cases. The evidence offered by the state was ample to support most, if not all, of its charges. Among the witnesses called by the prosecution was the appellant himself. When interrogated about particular cases, he frankly admitted facts which showed that some of the fees charged were unauthorized by law. His testimony will be again referred to in discussing another question. Appellant justified the presence of the erroneous fees in his accounts by saying that the district clerk, Adams made out his accounts, and he was not familiar with many of the items inserted therein by Adams. He also testified that in several instances fees to which he was not entitled and mileage which he had no legal right to collect were included in his accounts upon the advice of the district judge, county attorney, and the county judge. He claimed that in making these charges he acted in good faith and also in accordance with a custom adopted by sheriffs in other counties.

Omitting its formal parts, the charge of the court upon the issues to be considered in this opinion is as follows:

"You are further instructed that, when a sheriff holds a warrant for the arrest of an accused, issued upon an indictment found against the party accused, and when the sheriff has arrested the person under such warrant, that he is not entitled to include in his account for services rendered in said case fees for arrest, or for bond taken or mileage incurred under warrant or other process issued out of a justice court for or against the accused prior to the indictment of the party.

"You are also instructed that, when one is arrested upon a warrant issued upon a grand jury indictment and no bond is taken from the accused but the prisoner is committed to jail, the sheriff is not entitled to include in his account or to collect for taking bond or commitment.

"By the term 'willful' or 'willfully,' as used in this charge, means that the defendant, Ira McDaniel, placed items and claims in his account for services which he knew he was not entitled to under the law to be paid for, and that he did so for the purpose of collecting unlawful fees from the state.

"(3) If the defendant placed in his accounts, or in either of them, claim for fees which he in good faith believed he was entitled to, he would not be guilty of willfully collecting unlawful fees, even though such fees or fee was not under the law due him, and even though he was not entitled to collect such fee or fees.

"If Carl Adams, district clerk of Delta county, made out the defendant's account for fees claimed to be due him, and if said clerk placed any one or more items in said account for which the defendant was not entitled to be paid as fees; if the defendant did not know that the clerk placed such item or items in said account, then in such event the defendant would not be guilty of willfully collecting such fee or fees, even though he received payment therefor.

"If the defendant placed or caused to be placed in his account claims for summoning witnesses and mileage incident thereto which he believed had been summoned by his deputy, he would not be guilty of willfully and unlawfully collecting such fees, even though in fact the witnesses were not summoned.

"If in making out his account for payment the defendant placed in his account claims for services performed prior to the date of the indictment, against the same person, and caused payment to be made for such services, then such fees were unlawfully made and collected; but in such case, if the defendant in good faith believed he was entitled to be paid such fees under the law, then he would not be guilty of willfully collecting unlawful fees in that respect.

"(4) Now, under the foregoing instructions, if you believe from the evidence in this case that in any one or more of the cases described in the plaintiff's petition that the defendant, Ira McDaniel, placed or caused to be placed in his account claims for fees for services, which claims under the law he knew he was not entitled to collect, and if you further believe that in such event the defendant willfully, as that term is defined in this charge, made such claim and collected therefor, then you will find the defendant guilty of willfully collecting unlawful fees, and write your verdict according to the form here-

inafter given you; but, unless you so find, you will find the defendant not guilty, and write the form of verdict hereinafter given you.

"(5) If you believe from the evidence that the defendant placed in his account or accounts fees which he was not entitled to collect and which were unlawful under the law, or if you believe Carl Adams, the district clerk of Delta county, made out his account and placed claims therein which were not entitled to be paid, but if you further believe that all the unlawful claims which defendant placed in his account were in good faith, and upon opinions or advice given him by others believed by him to be claims which he was entitled to collect, and if you further believe that Carl Adams placed in his account any claims that he was not entitled to collect, but if you further believe that the defendant did not know that Adams had placed any such unlawful claims in the account, then in that event you will find the defendant not guilty.

"(6) The burden of proof is upon the plaintiff to show by a preponderance of the evidence that the defendant is guilty of willfully and knowingly collecting unlawful fees.

"You are the sole judges of the facts proven and credibility of the witnesses and the weight to be given their testimony.

"If you find the defendant guilty the form of your verdict will be: 'We, the jury, find the defendant, Ira McDaniel, sheriff of Delta county, guilty of knowingly and willfully collecting unlawful fees as alleged in plaintiff's petition in the case (or cases, if more than one) of ——,' filling in the verdict of the case, or cases, mentioned in the plaintiff's petition in which you find such fees were collected.

"If you find the defendant not guilty the form of your verdict will be: 'We, the jury, find the defendant, Ira McDaniel, not guilty of knowingly and willfully collecting unlawful fees in any of the cases set out in plaintiff's petition.' "

The accounts upon which the charges of official misconduct are based are for services rendered in the district court after indictments had been returned against the defendants in the cases. Nowhere in the accounts is there any claim made for services rendered in examining trials before magistrates.

Article 1033 of the Code of Criminal Procedure provides that before the close of each term of the district court the sheriff shall make out a bill of costs claimed to be due him by the state in the felony cases tried at that term. The bill shall show the style and number of each case, the offense charged against the defendant, the term of the court, the disposition made of the case, the names and number of the defendants, where each defendant was arrested or witness served, stating the county in which the service was made, and giving the distance and direction from the county seat of the county in which the process is served. Article 1034 provides that, when such bill is presented to the district judge, he shall examine the same carefully, inquire into its correctness, and approve the same, in whole or in part, or disapprove the entire bill, as the facts and law may require, and such bill, with the action of the judge thereon, shall be entered on the minutes of the court. Immediately on the adjournment of the court, the clerk shall make a certified copy from the minutes of the court of the bill and the action of the judge thereon, and send the same by registered letter to the comptroller. Article 1035 provides that the comptroller, upon the receipt of such claim and certified copy of the minutes, "shall closely and carefully examine the same, and, if correct, draw his warrant on the state treasurer for the amount due, and in favor of the officer entitled to the same."

The record shows that appellant's accounts were approved by the presiding judge of the court in which the cases were pending, and later transmitted to the comptroller and paid. Counsel for appellant insisted that the approval of the accounts by the district judge of the Eighth district was a judicial order which concluded further inquiry into the correctness of appellant's accounts except in a direct proceeding to reopen and correct them, and for that reason that the order of approval is a bar to this suit. As supporting that contention, they refer to the case of Rochelle v. Lane, 105 Tex. 350, 148 S. W. 558. That was a case in which Rochelle as sheriff sought a mandamus to compel Lane as comptroller to issue warrants for the payment of fees claimed in felony cases. It appears that the comptroller had examined the accounts and had refused to issue warrants for certain amounts claimed, upon the ground that those items were not correct. The question presented in the mandamus proceeding was, Did the comptroller have the authority to revise the accounts after their approval by the district judge? The court held that he had no such power, and stated that the action of the district judge in approving the accounts was judicial in its nature and could not be reviewed by the comptroller.

It is not the purpose of this proceeding to reopen and correct the sheriff's account as a claim against the state, but one to remove the sheriff for misconduct in presenting, verifying, and collecting some of those claims. As a judgment against the state, the judicial order is undisturbed; nor is is necessary that it should be revised in order to permit the rendition of a judgment of ouster in any case. Removal from office is one of the penal consequences which the law imposes upon those who thus misuse the judicial machinery of the state. Among other things, the appellant is charged with having made false affidavits upon which the district judge must have acted in approving the incorrect accounts. Suppose he should be prosecuted for perjury, certainly it could not be urged that the orders of approval should be set aside before the correctness of the accounts to which the affidavits related could be inquired into, in order to establish the charge of perjury. In

article 5973 of the Revised Civil Statutes, official misconduct for which an officer may be removed is thus defined:

"Any unlawful behavior in relation to the duties of his office, willful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the laws."

In this instance the charges of official misconduct are based upon the entire transaction—making the false affidavits, securing the order of approval, and collecting the illegal fees.

The form in which the material issues were submitted to the jury is assailed as being contrary to the requirements of the statute. Article 5978 of the Revised Civil Statutes of 1925, which applies to proceedings of this character, provides:

"In these cases the judge shall not submit special issues to the jury, but shall, under a proper charge applicable to the facts of the case, instruct the jury to find from the evidence whether the cause or causes of removal set forth in the petition are true in point of fact or not; and, when there are more than one distinct cause of removal alleged, the jury shall by their verdict say which cause they find sustained by the evidence before them, and which are not sustained."

No objection was made in the trial below to the charge of the court because of a variance from the statutory form. The objection here presented is that the error is fundamental. It is contended that this is in the nature of a criminal proceeding, and the statutory form is imperative. This is essentially a civil suit, although the results sought are punitive in their nature. Its determination constitutes no bar to the subsequent indictment and prosecution of the defendant for any criminal offense he may have committed in the misconduct with which he is here charged. While his removal from office may cause him an injury, the infliction of that injury is not the primary object of the proceeding. The principal purpose in such proceeding is to relieve the state of an unfit public official. If there were any informality in the manner in which the court in this instance presented the issues to the jury, the defect was not of a fundamental character, and was waived by the failure of the appellant to object at the proper time. However, we are of the opinion that, while the charge was not in the very language of the statute, it was a substantial compliance with its requirements. There is no practical difference between saying that the defendant was guilty of the charges contained in the relator's petition and in saying that those charges were true.

In the course of his charge the court instructed the jury that the appellant had no right to include in his accounts mileage traveled in executing warrants issued by magis-

trates in examining trials. The giving of that charge is assigned as error. The statute regulating sheriffs' fees in examining trials is found in article 1020 of the Code of Criminal Procedure. It provides that sheriffs and constables serving process and attending magistrates' courts in the examination of any felony case shall be entitled to such fees as are fixed by law for similar services in misdemeanor cases, to be paid by the state, not to exceed $4 in any one case. The appellant did not present any claim in these accounts for services rendered in justice courts, but he did in a number of cases charge for the miles he traveled in executing warrants issued out of justice courts in examining trials. He testified that when arrests were made in Cooper, the county site, upon warrants issued after indictment of defendants, he charged in his account $3 for executing those warrants and for the miles he had traveled in executing other warrants which had been issued out of the justice courts. That such charges against the state are unauthorized by the statute is too plain for argument. It is equally clear that, if they are unauthorized by some statutory provision, they cannot be legally collected from the state. The fact that a custom of charging such mileage has been adopted and followed by the sheriffs of other counties may tend to disprove any evil intent on the part of the appellant in placing those items in his accounts, but the custom does not alter the law. The court fairly submitted to the jury the issue of appellant's good faith. In their answer the jury determined that issue against him, and there was sufficient evidence to support that conclusion.

It was admitted in the trial that the appellant had included in his accounts fees and mileage for summoning witnesses in a case in which the witnesses had not been summoned. He stated, as a justification for that error, that he thought the witnesses had been summoned by a deputy, who had been discharged before the accounts were prepared. The deputy testified that he informed the sheriff that those witnesses had not been summoned, and offered his services to aid the appellant in making out his accounts, and that his offer was declined. The issue created by that conflict in the testimony of the appellant and his deputy was submitted by the court to the jury and decided against appellant.

It is claimed that in his charge the court improperly and insufficiently defined the term "willful." We think the objection is untenable. The court gave a plain and easily understood rule by which the jury could determine whether or not the appellant had an evil motive, or a bad intent, in making the illegal claims for fees. Considered as a whole, as well as in its details, we think the charge is a clear statement of the law and a plain and fair presentation of the material issues involved.

■ Another assignment of error presents an objection to the closing argument of L. L. James, a private prosecutor in the case. The bill alleges that while James was making his closing argument to the jury he stated that the good people of Delta county had made up money and employed him to appear in the case. The defendant objected to that statement because there was no evidence to warrant it, and because it was highly prejudicial and inflammatory. The court sustained the objection and orally instructed the jury not to consider the statements of the attorney. The bill was allowed, with the following qualification:

"Mr. James, in replying to argument of defendant's counsel as to defendant's good standing in Delta county, stated that some of the good people of Delta county had made up money to employ him in the case. Before any further statement was made by James, I stopped him and told the jury there was no evidence in the case authorizing James to make that statement; that the jury would not consider the statement in any way. Mr. James at the same time told the jury that he should not have made the statement, that he withdrew the statement, and asked the jury not to consider it."

If this were a case in which there was a probability that the jury had been influenced by the improper language, even though the attorney had withdrawn it, and the court had given directions forbidding its consideration, we might feel disposed to set the verdict aside. But under the evidence it is difficult to see how the jury could have so found in the appellant's favor as to warrant any other judgment than the one rendered. In that connection a reference to some portions of the evidence will be sufficient.

Among the cases in which it was alleged that false claims for mileage had been made against the state is that of the state of Texas against Richard Naylor, charged with burglary. In his account appellant states that the defendant was arrested at Childress, in Childress county, Tex., on June 22, 1927; that appellant traveled 964 miles going to arrest, at 15 cents per mile and 964 miles returning with the prisoner, at 30 cents per mile. In explaining these charges, appellant testified as follows:

"I arrested Richard Naylor on the grand jury indictment at Childress, I believe. I went out there after him in my car a part of the way and in the bus a part of the way and on the train a part of the way. I made two trips there in my car; I believe the first time I went to Dallas in my car, and then rode the bus a part of the way, I don't remember whether it was to Wichita Falls. I don't think I rode the bus on to Fort Worth the first time; I believe that was the second time. I believe I rode the bus to Wichita Falls the first time. When I came back with the prisoner, I believe I came on to Fort Worth on the train. I do not remember whether that was in June or January; if my account shows it was in June, then that was the date. I only brought Richard Naylor back from Childress one time. I charged for bringing him back twice; I made two round trips and brought him back once. As a matter of fact, I knew I was not entitled for bringing him back twice. I am allowed 15 cents a mile for going after the prisoner and 30 cents a mile for returning with prisoner by private conveyance; that is printed in the account. For returning with the prisoner by railroad I was allowed 20 cents a mile. I did charge for bringing this prisoner back from Childress to Cooper at 30 cents a mile, notwithstanding that I only brought him back once, and that time I brought him part of the way on the train; I am pretty sure I brought him as far as Fort Worth on the train."

Appellant further stated that he did not know that he was not entitled to pay for bringing him back twice; that his attention was not called to that fact before he filed his account; that he figured the distance at 964 miles—just estimated it—did not make any effort to ascertain the correct distance from Childress. In explaining other charges for mileage, appellant testified that it was 136 miles from Cooper to Fort Worth. The undisputed testimony showed that it was 221 miles from Fort Worth to Childress by the nearest practical railway route. In this one case alone there is shown an overcharge of more than $300 for mileage. It may be that appellant thought he had a right to charge for two trips going to Childress, because he had made a previous unsuccessful trip; but there is no satisfactory reason for believing he had a right to charge for conveying the prisoner twice. when he knew he had conveyed him only once. Nor is there any reason why he should charge for the entire distance the rate allowed for transporting a prisoner by private conveyance, when more than half of the distance was traveled by railroad.

There were two cases against Carroll Massey charged with burglary. In one of the cases appellant states that the defendant was arrested in Dallas on June 15, and in the other that he was arrested at the same place on June 17. In each case the state is charged for 100 miles going to the place of arrest and 100 miles returning with the prisoner, making a total of 400 miles traveled in these two cases. There were also two cases charging the same offense against Henry Fuqua. In the account it is stated that this defendant was arrested at Dallas in both cases. The date of the first arrest is stated as June 10, and the other June 14. Concerning these two cases, the appellant testified as follows:

"I never have arrested Carroll Massey on the grand jury indictments; he was arrested on a justice warrant. In my account I charged and collected from the state of Texas $3 for making the arrest of Carroll Massey on the 15th of June, 1927, and 100 miles going to arrest the prisoner and 100 miles returning with prisoner, marking on my account that the case was continued. It is a fact that the case was not tried; I do not know whether his bond was forfeited then or not. * * * I did not arrest

"Carroll Massey on the 15th of June on the grand jury indictment. I did not arrest him on the 17th of June on a grand jury indictment. He made bond after the examining trial; he never did make bond after he was indicted. I got pay for my examining trial work. I charged and collected $3 for arresting Henry Fuqua, and for 100 miles going to arrest the prisoner and 100 miles returning with prisoner. I did not arrest him on the 10th of June, 1927. He has never been arrested on a grand jury indictment. I did not approve his bond after he was indicted; he has forfeited his bond and is a fugitive from justice; we have never caught him. The same thing is true in case No. 2576; he was not arrested on the 14th of June, 1927, and I did not approve his bond after he was indicted."

Other testimony shows beyond controversy that Massey and Fuqua forfeited the bonds they made after their examining trials, and were never apprehended after they were indicted.

If the appellant was shown to be guilty in any one of the cases above referred to, it was the duty of the jury to so find, and of the court, upon such finding, to enter an order removing him from office.

Other cases involving similar overcharges were disclosed by the record, but we deem it unnecessary to further discuss the evidence.

The judgment will be affirmed.