**The STATE of Texas on the Relation of Dale WHITE, Appellant,**

v.

**Scott BRADLEY, Appellee.**

**No. 2–97–259–CV.**

Court of Appeals of Texas, Fort Worth.

Nov. 6, 1997.

Before DAY, BRIGHAM and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

The State of Texas, on the relation of Dale White, appeals from the district court's quo warranto judgment determining that Scott Bradley, not Dale White, is entitled by law to hold the office of mayor in the Town of Westlake. The appeal is accelerated. *See* Tex.R.App. P. 28.2.[1] We reverse the district court judgment and render judgment granting the State's motion for summary judgment.

## 1. Background

The Legislature has provided that an elected officer of a general-law municipality is subject to removal from office upon written complaint filed by any person alleging grounds of official misconduct or incompetency as those terms are defined by statute. *See* Tex. Loc. Gov't Code Ann. § 21.002 (Vernon 1988). At the point when a complaint is filed against a mayor on one or more of the statutory grounds, the statute invests the individual aldermen with the duty to sit as "members of the court" to try and to determine the case against the mayor. *See id.* § 21.002(f), (g), (h). To trigger that duty, a written complaint against a mayor must be filed; the aldermen must serve a copy of it on the accused mayor and must set a date for the individual aldermen to sit as a court and conduct the trial of the complaint; and notice must be served on the mayor and each alderman to appear for the trial on that date. *See id.* § 21.002(f). If two-thirds of the aldermen present at the trial of the case find the mayor guilty of the charges contained in the complaint and if they find that is sufficient cause for removing the mayor from office, the statute authorizes the presiding officer of their trial to enter a judgment removing the mayor and declaring that office vacant. Whenever a vacancy exists on the governing body, a majority of the remaining aldermen (excluding the mayor) are authorized to fill it by appointment unless an election to fill the vacancy is required by article XI, section 11 of the Texas Constitution. *See* Tex. Loc. Gov't Code Ann. § 22.010 (Vernon 1988).[2]

The statute identifies the removal proceeding as a "trial." *See id.* At least one Texas court has characterized a proceeding for removal of an elected city official as "impeachment." *See Riggins v. Thompson,* 30 Tex. Civ.App. 242, 70 S.W. 578, 578 (1902, writ ref'd). The Texas Supreme Court once described the proceeding as "administrative," where a city charter provided for a removal proceeding to be conducted by a city council. *See Riggins v. Richards,* 97 Tex. 229, 77 S.W. 946, 947–48 (1904). In a mandamus proceeding connected to the case now on appeal, we alluded to the section 21.002 removal process as "administrative,"[3] but in this opinion, for

---

1. *See also,* Tex.R.App P. 42(a)(2), 49 Tex. B.J. 566 (1986, revised 1997).

2. Normally, public officials elected by the voters of a general-law municipality serve terms of 2 years. Under article XI, section 11 of the Texas Constitution, 4–year terms may be approved by a majority of the qualified voters of a general-law municipality who vote in an election called for that purpose.

3. *See Huntress v. McGrath,* 946 S.W.2d 480, 486 (Tex.App.—Fort Worth 1997, orig. proceeding [leave denied] ). In *Huntress,* a determination of whether the section 21.002 removal process was a "trial" or "administrative" proceeding was immaterial to the rationale of our opinion. After further consideration and for the reasons stated in this opinion, we are now convinced that a

reasons we will discuss, we will identify it by the statute's word, "trial."

## 2. The Town of Westlake

■ In a general-law municipality, a mayor and board of aldermen are the governing body.[4] One of the aldermen in the general-law municipality of Westlake complained of Mayor Scott Bradley in the manner provided in section 21.002, alleging grounds of incompetency and official misconduct. An allegation of "incompetency" in removal proceedings is not used in the sense that the officer complained of does not have the ability and intelligence sufficient to perform the official duties of office, but rather in a sense that the officer has exceeded his or her authority by defying or overruling lawful actions done by a city council. *See Riggins v. City of Waco*, 40 Tex.Civ.App. 569, 90 S.W. 657, 663 (1905, writ ref'd). There, the court opined that a mayor who ignores the legislative will of a board of aldermen because it does not suit his convenience or ideas is "incompetent" in the sense that it is a ground for removal from office. *Id.* 90 S.W. at 663.

■ The term "official misconduct" alone does not imply criminal behavior, because the law recognizes different types of official misconduct. *See Talamantez v. State*, 829 S.W.2d 174, 179–80 (Tex.Crim.App.1992). *Talamantez* was an appeal by a county commissioner after he was convicted of a third degree felony involving *criminal* official misconduct. In the opinion, Judge Clinton acknowledged that in a given situation there may be a *close relationship* between "*removal* official misconduct" and "*criminal* official misconduct." *Id.* at 180 (emphasis added). Only the latter was involved in *Talamantez*. However, the corollary to the observation that a close relationship *may* exist is that a meaningful *distinction* between the two types of official misconduct *does* exist, and that "*removal* official misconduct" is not necessarily the same as "*criminal* official misconduct." In Mr. Bradley's case, the complaint filed against him in the Town of Westlake under section 21.002 does not

charge him in words that allege a crime defined by the Texas Penal Code.

The Texas Supreme Court long ago acknowledged that when a city charter gives the city council, as a governing body, the power to remove city officers on grounds of misconduct, that council has a duty to hear the complaint and remove an officer who is found guilty of the grounds alleged. *See Riggins v. Richards*, 77 S.W. at 947. In Mr. Bradley's case, however, the board of aldermen, a governmental body, was not statutorily vested with that duty. Instead, section 21.002 charges the individual aldermen of a general-law municipality to sit as a special court for a removal trial.

The specific allegations of the complaint made against Mr. Bradley and filed with the aldermen are:

a. On April 10, 1997, Mayor Scott Bradley intentionally removed the notice for a special meeting that had been called by the Mayor Pro Tem upon Mayor Scott Bradley's failure to call said meeting. The Notice of Special Meeting had been properly posted by the Town Secretary at the direction of Carroll Huntress, Mayor Pro Tem. Additionally, Mayor Scott Bradley purported to unilaterally cancel the Special Meeting called for April 11, 1997 at 7:30 p.m. by posting a Notice to the citizens of the Town of Westlake on April 10, 1997.

b. On April 11, 1997, Mayor Scott Bradley directed the Town Secretary to not include agenda item 9, "[c]onsider and take action to continue the regular meeting to a date and time certain" on the agenda as requested by Mayor Pro Tem Carroll Huntress on that day. Such action is contrary to the accepted practices of the government of the Town of Westlake.

c. Mayor Scott Bradley instructed the Town Secretary to remove from proposed minutes of the meeting of March 24, 1997 action taken during that meeting. Such instructions called upon the Town Secretary to violate her statutory duties to accurately record the proceedings of the Board of Aldermen taken during the meeting.

---

section 21.002 removal proceeding is a "trial" by a special court.

4. *See* Tex. Loc. Gov't Code Ann. § 21.001 (Vernon 1988), revisor's note 1.

d. Mayor Scott Bradley caused the Town Engineer to prepare a false boundary map for the Town of Westlake in March 1995. Such map did not reflect the current boundaries of the town at that time and included property that had not been annexed into, and was not part of, the Town of Westlake. Mayor Bradley further caused the falsified boundary map to be presented to the Board of Aldermen as a part of Ordinance No. 237, with a false statement that the map reflected the current boundaries of the Town of Westlake, and signed and approved said Ordinance No. 237 with knowledge of the above.

After the trial, the members of the special court found Mr. Bradley guilty of the incompetency and official misconduct alleged in the complaint and found sufficient cause for his removal as mayor. The presiding officer of the trial then signed a judgment removing Mr. Bradley from the office of mayor and declaring the office vacant. Several days after the judgment was entered, the board appointed Dale White to fill the vacancy as mayor. *See* Tex. Loc. Gov't Code Ann. § 22.010 (Vernon 1988).

### 3. Quo Warranto

 When more than one person claims the same public office, an action in quo warranto is a proper procedure for determining the conflict. *See Dean v. State ex rel. Bailey,* 88 Tex. 290, 30 S.W. 1047, 1048 (1895). Quo warranto proceedings evolved from the common law, and where a public wrong was involved, the sovereign was necessarily the quo warranto plaintiff. *See State ex rel. Cavanaugh v. Nelson,* 170 S.W. 814, 815 (Tex.Civ.App.—Amarillo 1914, no writ). Historically, it was necessary that quo warranto proceedings be filed by and upon the relation of the attorney general or a district attorney. *See id.* The same is true under today's statutes. *See* Tex. Civ. Prac. & Rem.Code Ann. § 66.002 (Vernon 1997).

When Mr. Bradley claimed after his trial that the judgment had not lawfully removed him as Westlake's mayor, the State of Texas, on the relation of the board of aldermen's mayoral-appointee, Mr. White, filed a quo warranto action in the district court. As grounds for that relief, the State alleged that although the members of the special court had lawfully removed Mr. Bradley from office and after the board had appointed Mr. White as his successor, Mr. Bradley refused to leave and instead became a usurper and intruder by unlawfully claiming to hold the office of mayor. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 66.001, 66.002 (Vernon 1997); Tex.R. Civ. P. 779–782.

Once the quo warranto action began, the State and Mr. Bradley each filed a motion for summary judgment. By their respective motions, the parties claimed in the district court that the only issues in the quo warranto action were issues of law, not genuine issues of material fact. The district court's determination of those motions is the platform for this appeal by the State. The quo warranto action ended with the district court's order denying the State's motion and granting Mr. Bradley's motion. The written order entitled "Trial Court Decision" is final and appealable, and the State contends that the relief granted in the order exceeds the relief authorized by statute for a quo warranto action. *See* Tex. Civ. Prac. & Rem.Code Ann. § 66.003(1) (Vernon 1997).

At least one appellate court has pointed out that although the judgment in a quo warranto action must conform to applicable statutory directives and must not grant relief beyond that to which the relator is entitled upon proof of the allegations that are the basis for the action, the trial court may nevertheless grant other and different relief that is appropriate to the purpose of the proceeding and to the proof made. *See Crain v. Adams,* 120 S.W.2d 290, 293 (Tex.Civ.App.—Amarillo 1938, no writ). Here, in addition to the district court's rulings on the opposing motions for summary judgment, the relief granted in the order includes a declaration that the judgment of the aldermen's court is void, a declaration that Mr. Bradley is Westlake's lawful mayor, and a declaration that Mr. White has never been the lawful mayor of Westlake. The order taxes all costs of the quo warranto action against Mr. White.

### 4. Issues

The issues preserved for appeal and presented by the State require us to determine

whether the district court erred by (1) overruling the State's special exceptions to Mr. Bradley's first amended original answer; (2) granting Mr. Bradley's motion for summary judgment; (3) denying the State's motion for summary judgment; and (4) granting relief in the judgment that exceeds the relief authorized for quo warranto proceedings by section 66.003. TEX. CIV. PRAC. & REM.CODE ANN. § 66.003 (Vernon 1997). We will not address these issues in the same order as they are presented in the State's brief. And, we note that because no one asserts that the mayoral vacancy after Mr. Bradley's removal trial should have been filled by an election, that is not an issue.

However, there are constitutional issues. The State's basic argument on appeal is that the quo warranto decision of the district court was erroneous because Mr. Bradley already had been lawfully removed from office and because Mr. White already had been lawfully appointed as his successor before the quo warranto action began. At the district court, Mr. Bradley's summary judgment motion asserted that the section 21.002 removal procedure the removal court used violated statutory and constitutional requirements and therefore he was never lawfully removed as mayor. Mr. Bradley insists that the board's appointment of Mr. White as Westlake's mayor was a nullity. Moreover, Mr. Bradley urges that his trial by a special court comprised of the individuals who were aldermen has been nullified because a new *board* of aldermen granted his motion for new trial. That board was not elected and seated until after the removal judgment against him, but granted his motion for new trial.

■ A fundamental principle of law is that every public officeholder remains in office at the sufferance and for the benefit of the public, subject to removal from office either by edict of the ballot box at the next election or before that time by any other constitutionally permissible means. *See Tarrant County v. Ashmore*, 635 S.W.2d 417, 421 (Tex.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 452, 74 L.Ed.2d 606 (1982). The district court granted Mr. Bradley's motion for summary judgment, which included his challenges that

section 21.002 is unconstitutional because it allegedly violates the separation of powers doctrine, *see* TEX. CONST. art. II, § 1; and that because its provisions are allegedly vague, section 21.002 generally denies his right to the procedural due process protections of the 5th and 14th Amendments to the U.S. Constitution, and also article I, section 19 of the Texas Constitution; and that section 21.002 specifically denies those due process rights because it allegedly denies him the right to a jury trial under article I, section 15 of the Texas Constitution; and that section 21.002 denies his due process rights because it allegedly violates article V, section 11 of the Texas Constitution by allowing aldermen to sit as judges of his case, in which Mr. Bradley alleges they had a pecuniary interest.

■ When considering a challenge to the constitutionality of any statute, we start with the presumption that the statute is constitutional. *See HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 (Tex.1994) (op on reh'g). And the burden of proof is on the party challenging constitutionality. *See Travelers Indem. Co. of Illinois v. Fuller*, 892 S.W.2d 848, 850 (Tex.1995).

■ We are mindful that the requirements of procedural due process apply only to the threatened deprivation of liberty and property interests deserving the protection of the federal and state constitutions. *See Ashmore*, 635 S.W.2d at 422. And although an elected officer's interest in his or her elected office is not "property" in the conventional sense, it is a recognizable interest for purposes of procedural due process analysis. *See id.* However, it is incorrect to state that the full procedural protections afforded in a criminal trial proceeding are required every time there is a right to a hearing. *See id.*

### 5. Standard of Review for Summary Judgments

■ By complaining that the trial court erred in granting Mr. Bradley's motion for summary judgment, the State has complied with TEX.R.APP. P. 38.1(e) and is entitled to brief and argue all possible grounds upon which Mr. Bradley's summary judgment mo-

tion should have been denied. *See Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *see also Plexchem Int'l, Inc. v. Harris County Appraisal Dist.,* 922 S.W.2d 930, 930–31 (Tex.1996). In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990); *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

■■■■ Although the Summary Judgment Rule, Tex.R. Civ. P. 166a, was amended effective September 1, 1997, the district court heard and ruled on the summary judgment motions before that date. In this case, Mr. Bradley would be entitled to have his summary judgment affirmed if the record shows that, as defendant-movant, he conclusively proved all essential elements of his defense in quo warranto as a matter of law, *see City of Houston,* 589 S.W.2d at 678, or if the summary judgment evidence establishes, as a matter of law, that at least one element of the State's quo warranto action cannot be established. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). To defeat at least one element of the State's quo warranto action, Mr. Bradley, as a defendant-movant, was required to present summary judgment evidence that negates an element of the State's claim. That presentation by Mr. Bradley would shift the burden to the State to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995).

### 6. The Bradley Grounds

Mr. Bradley's motion asserts that he is entitled to summary judgment on grounds that we paraphrase as follows:

1. Section 21.002 is unconstitutional on its face for violating the separation of powers doctrine of Texas Constitution article II, section 1;

2. Section 21.002 violates his right to due process protections under the Fifth and Fourteenth Amendments to the U.S. Constitution and Texas Constitution article I, section 19, because the removal procedure provided in the statute is unconstitutionally vague;

3. The removal trial violated his constitutional right to due process protections, including the right to a trial before an unbiased court, the right to trial by jury, the right to be tried by a court that is governed by rules of procedure and evidence, the right to be informed what rules apply, the right to call and cross-examine witnesses, the right to effectively present evidence, and the right to appeal the aldermen's decision;

4. The removal trial under section 21.002 is penal in nature and denied him the right to a jury trial under Texas Constitution article I, section 15;

5. The aldermen violated Texas Constitution article V, section 11 by sitting as judges in a case where they had a pecuniary interest;

6. The removal trial violated the rules of justice courts by refusing to grant him a change of venue, failing to empanel a jury, failing to recuse the aldermen, allowing the aldermen to testify as witnesses in the case they were trying, failing to allow him full cross-examination, and failing to allow him 10 days to perfect an appeal.

7. The removal trial violated the Open Meetings Act because the trial's location was changed without properly posting notice of the new location and because the aldermen did not allow persons with cameras or video equipment into the room where the trial was held;

8. The evidence at the trial did not support his removal from the office of mayor;

9. The removal judgment against him became a nullity when a new board of aldermen granted his motion for new trial;

10. His removal from the office of mayor became null and void when he filed an appeal bond with a new board of aldermen.

### 7. Separation of Powers and Section 21.002

We begin with a constitutional issue. Mr. Bradley contended in his motion for summary judgment and argues in this appeal that section 21.002 is unconstitutional. He insists that it authorizes members of a board of aldermen, whose inherent governmental functions are primarily legislative, and perhaps to some extent executive, to exercise *judicial* power that the constitution vests only in courts. The Texas Constitution provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1.

The constitution also states that "[t]he Legislature shall provide by law for the trial and removal from office of all officers of this State, the modes for which have not been provided in this Constitution." TEX. CONST. art. XV, § 7. There is no constitutional provision expressly addressing the removal of mayors of general-law municipalities, and we find no case law according "officer of the state" status to a mayor or alderman of a general-law municipality. However, the Texas Supreme Court has reasoned that in discharging their duties, city council members of home-rule cities [5] are engaging in governmental activities by exercising a portion of the sovereign powers of the state, and therefore are officers of the state within the meaning of the state constitution. *See Willis v. Potts,* 377 S.W.2d 622, 625 (Tex.1964). There, the rationale was that the constitution provides that cities, towns, and villages may be created under general laws passed by the Legislature, and that the Legislature grants to municipalities powers that consist of duties imposed rather than privileges granted. *See id.* And that because they implement and enforce the general state laws within their municipality, the officers of municipal corporations are acting as agents of the state. *See id.* We perceive the analogy equally applicable to the mayor and aldermen of a general-law municipality, and because no removal process is specifically provided for them elsewhere in the state constitution, article XV, section 7 applies to them.

The separation-of-powers provision in our state constitution, article II, section 1, does forbid a wholesale transfer of the inherent power of one branch of government for the purpose of vesting it in another branch. *See Coates v. Windham,* 613 S.W.2d 572, 576 (Tex.Civ.App.—Austin 1981, no writ). However, section 21.002 does not make such a transfer. And, since 1891, the following provision has been part of our state constitution:

> The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.

TEX. CONST. art. V, § 1. That provision has been interpreted to mean that as long as a statute creating a court for a special purpose does not deprive an existing court of its constitutionally-conferred jurisdiction, the statute does not contravene the state constitution. *Cf. Kelly v. State,* 724 S.W.2d 42, 46 (Tex.Crim.App.1987). Accordingly, the Legislature may constitutionally create courts that are not expressly named in the constitution as members of the Judicial Branch of government, such as probate courts, family law courts, and juvenile courts, all with special and limited jurisdiction. *See id.* Al-

---

**5.** A home-rule municipality is one that operates under a charter authorized by article II, section 5 of the Texas Constitution. *See* TEX. LOC. GOV'T CODE ANN. §§ 1.005(2), 5.004 (Vernon 1988).

though article V, section 1 names the conventional appellate and trial courts of Texas and vests in them the "judicial power of this State," it also grants the Legislature the sole discretion to determine what other courts may be necessary and then to establish them. The Legislature used that power by enacting section 21.002, which makes clear that when executing duties imposed on them in that statute, the *members* of the board of aldermen, *not the board itself,* not the governing body, "constitute a court."

We acknowledge that the Texas Supreme Court once commented that when the provisions of a city charter legislatively require a *city council* to conduct a removal proceeding "in a manner judicial in character, [that] does not necessarily constitute the [city council] a judicial body." *See Riggins v. Richards,* 77 S.W. at 948. But, an important distinction of law exists between that case and the matter now on appeal. The trial and removal powers legislatively granted by the city charter in *Riggins v. Richards* were expressly vested in the *city council,* as a governing body, not in its individual members. Here, we must deal with the Legislature's grant of trial and removal powers in section 21.002, which only grants the powers to individual *members* of the board and not to the board as a governing body.

The Legislature has made clear that section 21.002 does create a *court* with single subject-matter jurisdiction, to act only in intervals where the special circumstances described in the statute dictate the need. In writing and adopting the statute's provisions, the Legislature used the word "court" four times, the word "trial" five times, the word "try" (as in "trial") two times, and the word "case" five times. The statute states precisely that the persons who will sit in judgment are "members of the court," and the statute mandates the use of justice court rules for the court's trials. Because section 21.002 specifies that once a complaint against a mayor is filed and set for trial, and specifies that a majority of the individual aldermen constitutes a *court* for the purpose of trying and determining the case, the statute plainly does not make the *board or governing body* a court. Yet, the statute does not transform the individual aldermen into a *perpetual* court with a continuous docket. Instead, only for the life of the complaint, the individual aldermen are authorized to sit as a special *ad hoc* court, created by an act of the Legislature under the constitutional authorization of article V, section 1. The individuals who are aldermen, not the board itself, constitute the special tribunal, and the fact that the subject matter of the trial may be a dispute of political or governmental origin makes the tribunal no less a court in a judicial sense for its designated purpose.

██ No provision of section 21.002 authorizes a *board* to employ justice court rules when sitting as a board governing the town. And, only for the specific time that it takes to try a removal complaint may the individual aldermen engage the statute's mechanism to resolve the complaint's unique issues. The reasonable meaning of section 21.002 is that once the members of the removal court finish the trial by entering a judgment, that "trial" is over and the members' status as a court ends. Analogous to *Cinderella,* the court members' figurative clock tolls the midnight hour when judgment is entered because the entry means their statutory carriage loses its wheels, and their judicial authority over that particular complaint vanishes. After that, the power of an individual alderman to sit as a member of an *ad hoc* court and use justice court rules does not revive until and unless some new complaint is filed. And, without a viable removal complaint filed and pending under section 21.002, on which a judgment has not yet been entered, an alderman has no statutory power, and certainly no inherent power, to exercise justice court rules.

██ Further, there is no statutory or inherent power vested in any mayor or alderman elected and seated after a complaint has already been tried and merged into a judgment, to exercise judicial powers and apply justice court rules by granting a motion for a new trial of that complaint. A complaint that was tried and adjudged before the election by the *ad hoc* court that finished its work and disbanded before the election is not a pending matter for reconsideration by a future *governing body.* Accordingly, we find no merit in Mr. Bradley's contention that a

board elected and seated after his removal trial was authorized either to accept his "appeal bond" or to grant him a new trial. Those purported actions were ineffective as a matter of law and did not nullify the removal trial and its judgment.

We conclude that the Legislature's enactment of section 21.002 did not violate the separation-of-powers provision of the Texas Constitution.

■ Moreover, Mr. Bradley's contention that the removal grounds of "incompetency" and "official misconduct," defined in section 21.002, are unconstitutionally vague is not persuasive. The statutory definitions are clear and not unconstitutionally vague. The scopes of conduct that may exist within the meanings of each of those terms are well documented in the case law of this state, some of which is cited in this opinion.

### 8. Aldermen Not Disqualified

■ Mr. Bradley also submits that because article V, section 11 of the Texas Constitution includes a clause stating that "[n]o judge shall sit in any case wherein he may be interested," the aldermen who were members of the special court were disqualified from trying the complaint against him. However, paragraph III of his motion for summary judgment in the district court alleges that there is no genuine issue of material fact in the case, and we find no summary judgment evidence establishing that the members of the board of aldermen had a direct pecuniary interest in the removal judgment. Mr. Bradley relies on *Hager v. State ex rel. TeVault,* 446 S.W.2d 43 (Tex.Civ. App.—Beaumont 1969, writ ref'd n.r.e.), but the facts of that case are unrelated to the issues now on appeal. There, the court determined that a city councilman was disqualified from sitting in judgment of the election contest over his own candidacy because it is "plain that a man cannot sit in judgment to decide upon the validity of a claim against himself." *Id.* at 49. A judge, however, is not disqualified in the absence of a direct pecuniary or property interest in the subject matter of the trial and in the judgment that will be entered. *See Palais Royal, Inc. v. Partida,* 916 S.W.2d 650, 653 (Tex.App.—Corpus

Christi 1996, no writ); *Nueces County Drainage & Conserv. Dist. No. 2 v. Bevly,* 519 S.W.2d 938, 951 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Moody v. City of University Park,* 278 S.W.2d 912, 919 (Tex.Civ.App.—Dallas 1955, writ ref'd n.r.e.); *see also Narro Warehouse, Inc. v. Kelly,* 530 S.W.2d 146, 149 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). Such evidence is not in the record of Mr. Bradley's trial, where the subject matter was the issue of whether the mayor should be removed from office upon the grounds alleged.

### 9. Procedural Rules

The procedural rules of Texas courts are published as a comprehensive tabulation of rules that will insure just, fair, and impartial trials in both civil and criminal matters arising from a seemingly infinite variety of actions and parties. *See* TEX.R. CIV. P. 1; TEX.CODE CRIM. PROC. ANN. art. 1.03 (Vernon 1977). Our laws provide a special set of rules for civil trials and other civil proceedings that may originate in a justice court. *See* TEX.R. CIV. P. 523–591. And, *insofar as they can be applied,* all civil rules governing district and county courts also are available for civil cases in justice courts, unless otherwise provided by law or by the special civil rules for justice courts. *See* TEX.R. CIV. P. 523. Moreover, the rules of evidence apply in justice court proceedings. *See* TEX.R. CIV. EVID. 101(b); TEX.R.CRIM. EVID. 101(b).

■ As we examine the meaning of the first sentence of subdivision (h) of section 21.002, which states that "[a] proceeding under this section is subject to the rules governing a proceeding or trial in a justice court," we must consider the statute's context and presume that the Legislature not only intended that the sentence would work a just and reasonable result but that the intended result would be "feasible of execution." TEX. GOV'T CODE ANN. § 311.021(3), (4) (Vernon 1988). Subdivision (h) references the justice court rules with the phrase is "subject to," and we find no Texas case law construing that phrase in this context. Another jurisdiction, however, has interpreted the phrase as meaning "not in conflict with." *City of Portland v. Jackson,* 316 Or. 143, 850

P.2d 1093, 1094 (1993). We agree with and adopt that interpretation. It is axiomatic that, regardless of the forum that hosts a proceeding, not every rule of procedure or evidence is usable or adaptable in every type of proceeding because one lawsuit or dispute is rarely the mirror image of another. It is reasonable that the axiom applies to a removal trial under section 21.002.

Against the backdrop of events that have led to this appeal, the words "a proceeding under this section" clearly mean a removal trial where general-law aldermen may determine a complaint filed against their mayor. We must consider whether it is just and reasonable for a removal trial under section 21.002 to be conducted using justice court rules for *civil* trials or whether the concepts of justice and reasonableness require that it be done with rules for *criminal* trials. The State argues that the nature of a trial to remove a mayor under section 21.002 is *penal* and therefore should be governed by the rules of *criminal* procedure for justice courts. But, the State stresses that there are none because our laws do not require or impose specific rules for criminal cases tried in justice courts. *See* TEX.CODE CRIM. PROC. ANN. art. 45.27 (Vernon 1979) (justice courts may try criminal cases over which they have jurisdiction without reference to "technical rules").

■ Mr. Bradley also submits that the nature of a removal trial under section 21.002 is *penal,* yet he insists the trial is *controlled* by rules of *civil* procedure. Integral to the parties' dispute over whether to apply civil or criminal rules of procedure in removal actions is Mr. Bradley's contention that section 21.002 describes only vague procedures for removing an elected official from office and therefore is unconstitutionally vague. Yet, Mr. Bradley simultaneously argues that the statute's provisions *plainly* afforded him the benefits of three specific rules of *civil* procedure in the removal trial: first, a change of venue (Rule 528); second, a jury other than the aldermen (Rule 544); and third, recusal of the aldermen from trying and determining his case (Rule 18b).

The first sentence of subdivision (h), is but one ingredient of section 21.002, so we have examined the sentence in the context of the entire statute to determine whether the sentence is unconstitutionally vague or whether it contributes to a just, reasonable, and feasible result that we presume the Legislature intended for the entire statute. After carefully considering the State's argument that a removal trial under section 21.002 is *penal* in nature, and Mr. Bradley's echo of that contention, we are not persuaded. Apparently, section 21.002 evolved from an 1875 Texas statute[6] containing substantially similar provisions. Although we acknowledge the State's argument that justice courts in 1875, and for years thereafter, had *only* criminal jurisdiction, we recognize that the justice courts gained civil jurisdiction long before 1987, when the Legislature enacted section 21.002. Significantly, the Legislature placed the statute in the Local Government Code, a codification of civil law.

■ The Texas Supreme Court has written a perceptive analysis of whether a removal trial's nature is civil or whether it is criminally penal, even though the analysis was written in a lawsuit involving the removal of a sheriff rather than a general-law alderman or mayor. *See Meyer v. Tunks,* 360 S.W.2d 518, 520 (Tex.1962). Although section 21.002, prescribing the statutory procedure for removing a general-law city official, does not state whether the trial is civil or criminal in nature, the Supreme Court's opinion in *Tunks* is instructive about the *purpose* of a removal trial, as well as its nature:

> While the removal petition will ordinarily charge the officer with the violation of a criminal statute, yet the character of the action is to be determined by the object sought to be accomplished and the nature of the judgment to be entered. It reasonably appears from the constitutional and statutory provisions authorizing this proceeding that *the object is not to punish the officer for his derelictions or for the violation of a criminal statute but to protect the public in removing from office by speedy*

---

6. Act approved March 6, 1875, 14th Leg., R.S., ch. 49, §§ 1–8, 1875 Tex. Gen. Laws 63, *reprinted in* 8 H.P.N. Gammel, The Laws of Texas 1822–1897, at 436 (Austin, Gammel Book Co. 1898).

*and adequate means those who have been faithless and corrupt and have violated their trust. The law imposes no other penalty.* It has been said that an officer has a property right in the office but that applies merely to the privilege of asserting his right to gain and hold the office in an election contest and in similar political affairs. The office belongs to the people and is given to him temporarily in trust. Even so *an action to deprive him of this or any other property right would be essentially a civil action.*

. . . .

*[T]he general rule seems to be that a public official has no constitutional right to a jury trial in a proceeding to remove him from office.*

*Tunks,* 360 S.W.2d at 520, 520–21 (emphasis added) (citations omitted).

■■■■■ *Tunks* emphasizes that because a removal trial's underlying purpose is to relieve the state of an unfit public official, removal from office is essentially a civil matter, and it provides a removed official no cloak of protection against double jeopardy and does not bar the official's post-removal indictment, prosecution, or conviction for any criminal offense committed while still holding the office. *Id.* at 520. Further, *Tunks* notes that unlike criminal trials where the prosecution may not compel an accused to testify, a public official has no exemption from having to testify as a witness at his own removal proceeding. *Id.* at 521 (citing, as inapplicable, TEX. CONST. art. I, section 10, relative to the rights of an accused in criminal prosecutions). *Tunks* further points out that the degree of proof necessary to support finding a public officer guilty of the removal complaint's allegations is the civil law standard, a *preponderance of the evidence,* rather than the criminal law standard of *"beyond a reasonable doubt." Tunks,* 360 S.W.2d at 520 (emphasis added).

Earlier, in another lawsuit involving a sheriff's removal, a Court of Civil Appeals rejected the notion that a removal proceeding's nature is criminal:

This is essentially a civil suit, although the results sought are punitive in their nature. Its determination constitutes no bar to the subsequent indictment and prosecution of the defendant for any criminal offense he may have committed in the misconduct with which he is here charged. While his removal from office may cause him an injury, the infliction of that injury is not the primary object of the proceeding. The principal purpose in such proceeding is to relieve the state of an unfit public official.

*McDaniel v. State,* 9 S.W.2d 478, 481 (Tex. Civ.App.—Texarkana 1928, writ ref'd).

■■■■ Although *Talamantez,* was decided after section 21.002 was enacted, the comments by Judge Clinton that we have already discussed are no less instructive now as we construe the statute's meaning in light of Mr. Bradley's challenge that it is unconstitutionally vague. Because *Tunks* and *McDaniel* entered this state's jurisprudence long before the Legislature enacted section 21.002, the following principle influences our evaluation of the statute:

All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. [Statutes] are therefore to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts. 59 C.J., p. 1038, § 616.

*McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125, 128 (Tex. Comm'n App.1942, judgm't adopted).

Regardless of whether a statute authorizing the removal does or does not mandate the use of *civil* procedural rules in the trial, none of the principles of law we have referenced from *Tunks, McDaniel,* and *Talamantez* seem reasonably peculiar to state or county officials alone. And, because the Legislature did not negate the application of the principles we have quoted from *Tunks* and *McDaniel* to removal actions brought under section 21.002, we sense no sound reason why those principles of law do not also

apply to a trial to remove a general-law alderman or mayor under that statute.

It is just, reasonable, and feasible that a removal trial under section 21.002, a civil law statute, should be conducted using only rules of *civil* procedure for justice courts, to the extent that justice court rules are adaptable to the trial. As we know, not every rule is adaptable to every trial, no matter what forum is the host. In a different setting, a conventional justice court trial would be conducted by a single justice of the peace with a jury, when appropriate to the proceedings. Through section 21.002, the Legislature has seen fit to provide a reasonable and feasible system for a removal trial that allows it to be conducted by a court comprised of citizens of the town who are members of its Board of Aldermen. If a justice of the peace and a jury were superimposed, the very persons the Legislature has selected to sit as a special court would be excluded from fulfilling the role the statute assigns them. We conclude that Rule 544, allowing a jury in a conventional justice court setting, is not reasonably adaptable to or required in a removal trial by the aldermen. *See also Tunks,* 360 S.W.2d at 520.

Justice and reason also dictate the following construction of section 21.002:(1) by its very nature and subject matter, section 21.002 *implicitly* establishes mandatory venue of an alderman's or mayor's removal trial in their own general-law municipality because the proceeding will directly affect the unique political structure of that town and no other, the town in which the affected mayor or alderman were elected and where they govern, where the members of the electorate live, and where the complaint arises; (2) section 21.002 clearly and properly limits the eligibility of persons who may sit on the special court to try the complaint and determine its outcome to only persons who are serving as mayor or aldermen of the town at the time the complaint is filed; and (3) recusal of those persons would be inimical to the purpose of the statute, which is to allow impeachment, known as a "removal trial," to be conducted within the community by persons who have been duly elected by and are accountable to the town's voters.

## 10. Evidence Rules

The evidence rules that apply in a removal trial, which is subject to justice court rules under section 21.002, are the rules of civil evidence. *See* Tex.R. Civ. Evid. 101(b). Although Mr. Bradley submits that Civil Evidence Rule 605 entitled him to exclude the aldermen from being both witnesses against him and judges of the case, the Texas Supreme Court has voiced the principle that even when aldermen assert a removal complaint against their mayor, they do so in the context of discharging their public duty, and that does not make them parties to the case, nor does it disqualify them from judging the case. *See Riggins v. Richards,* 77 S.W. at 949. In section 21.002, the Legislature has made available to all citizens of general-law municipalities, including mayors and aldermen, the right to file a complaint on the statutory grounds against an alderman or mayor. If the electorate of this State wants that to change, it is the province of the Legislature, not the courts, to change it. *See Huntress,* 946 S.W.2d at 486.

We do not disagree with Mr. Bradley's assertion that Civil Evidence Rule 611 entitled him to examine witnesses at the trial, which he did. However, Rule 611 vests in the official presiding at the trial the discretion to exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence. The summary judgment evidence in the record on appeal reflects no abuse of that discretion by the official presiding at the removal trial. Neither do we disagree with Mr. Bradley's contention that Civil Evidence Rule 607 entitled him to attack the credibility of witnesses at the trial, but the summary judgment evidence in the record on appeal reflects that he had those opportunities. Moreover, we acknowledge that questions of the admissibility of evidence must be resolved by the officer presiding at the trial. *See* Tex.R. Civ. Evid. 104(a). And that, in determining the admissibility of evidence, the one presiding is *not* bound by the rules of evidence except those with respect to privileges. *See id.*

The Texas Supreme Court has stressed that there is a distinction to be made be-

tween "adjudicative" facts and "legislative" facts. *See Ashmore*, 635 S.W.2d at 423. In that light, the summary judgment evidence in the record reflects that the fact issues that were in dispute at the removal trial were mostly "legislative" facts dealing with matters of policy and administrative discretion, affecting the individual aldermen and the mayor to the extent that they had been involved in those matters in the overall legislative scheme of the municipal government, and that the complaint against Mr. Bradley arose from those activities. *See id.* By appearing and testifying at the removal trial, Mr. Bradley had the opportunity to protect his reputation and honor.

## 11. Appellate Judicial Review

Having carefully considered the entire record, including the summary judgment evidence that contains the testimony of the witnesses who testified at the removal trial, the record reveals no basis for a conclusion that the members of the removal court acted arbitrarily or capriciously or that federal or state constitutional protections of due process were denied to Mr. Bradley.

██ With this opinion, we neither infer nor draw any conclusion as to whether Mr. Bradley did or did not commit the acts alleged in the grounds charged in his removal trial. If we were to decide those issues, we would simply be substituting our judgment for that of the members of the special court the Legislature has constitutionally entrusted with the sole power to determine and resolve the political disputes that either cause or result from a removal complaint. *See Riggins v. City of Waco*, 100 Tex. 32, 93 S.W. 426, 427 (1906) (a case in which the city council, not a specially created court, held the removal powers). There, the Texas Supreme Court plainly defined the limits upon a reviewing court's power to interfere with the result of a municipal removal trial:

> [A reviewing court] cannot interfere with or disregard the action of the city council whereby [the elected officer] was removed from office. The power of removal is vested in that body by law, and no power of review, merely, is given to the courts. The law requiring that the removal should be

for specified causes and after a hearing, the council was not empowered to deprive the mayor of his office arbitrarily or capriciously; and the courts as incidental to their power ... may inquire whether or not the council exceeded its lawful authority in the attempted removal ... but beyond this [a reviewing court has] no rightful power over the subject. *The most that could be asserted in favor of the power of the [reviewing] courts is that they may inquire whether or not [1] charges were duly preferred, [2] a hearing had, and [3] evidence adduced tending to sustain them....*

*See id.* (emphasis added). The criteria of that *Riggins* opinion were satisfied in connection with Mr. Bradley's trial by the aldermen. *See also City of San Antonio v. Wallace*, 161 Tex. 41, 338 S.W.2d 153, 155 (1960) (orig.proceeding); *Barrington v. Cokinos*, 161 Tex. 136, 338 S.W.2d 133, 142–43 (1960).

██ Both in his summary judgment motion in district court and in this appeal, Mr. Bradley contends that a removal trial under section 21.002 is unconstitutional because there is no statutory right of appeal. That contention, however, is contrary to the venerable principle of law that the decision of a court sitting as a special tribunal in the exercise of some special or exclusive authority, as distinguished from the general power conferred on the Judiciary by the constitution, is not appealable unless specifically made so by statute and, absent a provision for appeal, the inference is that the tribunal's decision is final and conclusive. That principle is consistent with the holding of the Texas Supreme Court in *Riggins v. City of Waco*, 93 S.W. at 427, which we have already discussed. *See also Rogers v. Johns*, 42 Tex. 339, 340 (1875) (no constitutional provision is infringed by not allowing appeal from the decision of a special tribunal); *O'Docherty v. Archer*, 9 Tex. 295, 296 (1852) (because the statute creating the special tribunal gave no right of appeal, the inference is that none was intended).

Because section 21.002 creates a special court to conduct removal trials and does not include a provision for appeal, appellate review of the action taken by the special court

is limited to the criteria established in *Riggins v. City of Waco*, 93 S.W. at 427.

### 12. Open Meetings Act

 In his summary judgment motion and in response to the State's appeal, Mr. Bradley contends that the board of aldermen violated the Open Meetings Act[7] in connection with the April 29, 1997 removal trial. Mr. Bradley notes that the site of the aldermen's trial was not the location named in the 72–hour advance notice the special court had posted, and he urges that another notice purporting to prohibit cameras and video equipment violated section 551.023. The purpose of the Open Meetings Act is to assure that the public has the opportunity to be informed about transactions of public business. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 300 (Tex.1990). And, an action taken by a governmental body in violation of the Act is voidable, not void. *See* TEX. GOV'T CODE ANN. § 551.141(Vernon 1994).

 In an opinion construing the meaning and scope of the Open Meetings Act, the Texas Supreme Court cautioned that whenever a statute contains no clear directive, courts must not construe the statute "to produce an absurd or foolish result, if [the statute] is reasonably susceptible of an alternative construction." *See City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 768 (Tex.1991) (orig.proceeding). There is no clear directive in the Open Meetings Act establishing that the Legislature intended for its provisions to apply to a special court created under section 21.002 of the Local Government Code. And, a careful reading of the Open Meetings Act reveals that courts, trials, and related court proceedings are not among the types of matters it governs. *See, e.g.*, TEX. GOV'T.CODE ANN. § 551.001 (Vernon 1994).

 Unquestionably, when taking actions as a governing body, a board of aldermen must comply with all applicable requirements of the Open Meetings Act. The Act imposes that duty upon every "municipal governing body," as well as upon any deliberative body that has quasi-judicial power *and* is classified as "a department, agency, or political subdivision" of a municipality. TEX. GOV'T CODE ANN. § 551.001(3)(C), (D) (Vernon 1994). A *board* of aldermen with a mayor is a "municipal governing body," but the board's individual *members* are *not* the governing body. *See* TEX. LOC. GOV'T CODE ANN. § 21.001, revisor's note 1, § 22.031 (Vernon 1988); *Webster v. Texas & Pacific Motor Transport Co.*, 140 Tex. 131, 166 S.W.2d 75, 76–77 (1942); *Alamo Carriage v. City of San Antonio*, 768 S.W.2d 937, 941–42 (Tex.App.—San Antonio 1989, no writ); *City of Coppell v. General Homes Corp.*, 763 S.W.2d 448, 452, 457 (Tex.App.—Dallas 1988, writ denied); *Cook v. City of Addison*, 656 S.W.2d 650, 657 (Tex.App.—Dallas 1983, writ ref'd n.r.e.); *City of Floydada v. Gilliam*, 111 S.W.2d 761, 764 (Tex.Civ.App.—Amarillo 1937, no writ) No governing body of a political subdivision may act other than as a body corporate. *See, e.g., Davis v. Duncanville I.S.D.*, 701 S.W.2d 15, 17 (Tex.App.—Dallas 1985, writ dism'd) (applying the rule to the governing body of a school district). Section 21.002 does not authorize a *municipal governing body* to sit as a court for removal trials, but only authorizes the individuals who are *members* of a board to also sit as *members of a court* during special circumstances to try (as in a "trial") and determine the case.

Mr. Bradley's removal trial was conducted by the special court, not by the *governing body*. The members of that court are not one of the town's *departments, agencies, or political subdivisions* with quasi-judicial powers, described in section 551.001(3)(D) of the Open Meetings Act. Quasi-judicial proceedings have been described as proceedings conducted before executive officers, boards, and commissions. *See Lane v. Port Terminal R.R. Ass'n*, 821 S.W.2d 623, 625 (Tex. App.—Houston [14th Dist.] 1991, writ denied). In the provisions of section 21.002, the Legislature has left no doubt that persons authorized to try a removal trial under that statute comprise a duly constituted special court, not a quasi-judicial body.

---

7. Tex. Gov't Code Ann. §§ 551.001— 551.146(Vernon 1994).

As we construe the provisions of the Open Meetings Act, the facts of the case dictate that we must not isolate its provisions, but must consider the Act's interconnection with section 21.002. *See McBride,* 166 S.W.2d at 128. Because the Open Meetings Act contains no clear directive that its provisions apply to special courts created by the Legislature, or to any other types of courts, we foresee "an absurd and foolish result," cautioned against in *City of San Antonio,* if we construe the Act as applicable to the special court in this instance. That interpretation would be absurd because it would have us ignore the clear directives of section 21.002 that plainly speak of "court," "trial," "members of the court," and "justice court rules."

 We decline to inflict an absurd and foolish interpretation that would scorn the fundamental principle that all trials must and should be conducted in public anyway, notwithstanding the inapplicability of the Open Meetings Act to trials and court proceedings. And, it would be foolish and absurd to ignore the realities of the trial in this case when the record illustrates that the members of the court held a public trial of the complaint against Mr. Bradley, and that the public trial fulfilled the *purpose* of the Open Meetings Act, aside from any questions of literal compliance with it. It is undisputed that on April 26, 1997 a 72–hour advance notice was posted at the Westlake Town Hall, informing the public that the trial of the complaint against Mr. Bradley would be held at that location at 11:00 a.m. on April 29. On April 28, the day before the scheduled trial, a new notice was posted at the Town Hall, informing the public that the scheduled April 29 trial would be held on April 29, at 11:00 a.m., but in a different building. It is undisputed that a large crowd of people was expected to attend the trial, and that the location identified in the second notice (April 28) has a meeting room larger than the one in the Town Hall. The new notice changed only the location of the trial, not the date or hour of the trial. And, a map and directions to the location of the new meeting room were also posted on the door of the Town Hall room where the trial was originally scheduled to take place.

Mr. Bradley and his attorney did attend and participate in the trial, his attorney had a prominent role in the trial, members of the public attended, and members of the press attended. The audience at the trial included at least one person with a camera, and there was at least one video recorder. A videotape of the trial was made. The entire trial, which began at 11:05 a.m. and ended at 2:35 p.m. on April 29, was transcribed in writing by a certified shorthand reporter, whose transcription is part of the summary judgment evidence included in the record in this appeal. It is apparent from the record that the posted notices did give the public the opportunity to be informed in advance that there would be a public trial of the complaint against Mr. Bradley. We conclude that Mr. Bradley's removal trial pursuant to section 21.002, was a court proceeding that did not require compliance with the Open Meetings Act.

### 13. Special Exceptions

 A trial court has broad discretion in ruling on special exceptions and will not be reversed unless the court abused its discretion by acting on the exceptions without reference to any guiding rules or principles. *See Fernandez v. City of El Paso,* 876 S.W.2d 370, 371–72 (Tex.App.—El Paso 1993, writ denied). Special exceptions must point out intelligibly and with particularity the particular pleading excepted to, as well as the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to. *See* TEX.R. CIV. P. 91.

During the course of the quo warranto proceeding, Mr. Bradley filed an original answer, then a first amended original answer, then a second amended original answer, and finally a third amended original answer. The only special exceptions the State filed challenged, on grounds of law, each of the affirmative defenses Mr. Bradley had pled in his first amended original answer. The day after filing the special exceptions, the district court held a hearing to consider them. The second and third amended answers had not yet been filed when the hearing was held. At the hearing, the district court sustained

some of the special exceptions and overruled some, but refused to rule on others.

 The record shows that the State did not register an objection when the district court announced that a future ruling on the summary judgment motions would make it unnecessary for the court to rule on the remaining issues raised by the State's special exceptions. The issue the State presents on appeal about special exceptions is that "[t]he trial court erred in overruling the State's special exceptions to Bradley's first amended original answer." Yet, one of the State's arguments in connection with that issue is that the district court's decision to *defer* ruling on its special exceptions until the summary judgment hearing denied the State the right to have "these important issues" decided before trial and that the court's decision to *defer* rulings led directly to the rendition of an "improper judgment." Another of the State's arguments on this issue contends that "[t]he result on summary judgment would not have been the same if the trial court had properly addressed the State's special exceptions at the time they were presented." The State also submits that "[b]y failing to sustain any of the State's substantive special exceptions, the trial court created the setting for an improper judgment." The State's arguments blur its special exceptions issue by not specifying which special exception, or which ruling, the various arguments relate to. Finally, and without specificity, the State argues that no amendment of Mr. Bradley's answer could have cured the special exceptions. But, by not specially excepting to either the second or third amended answers, the State waived its opportunities to challenge the absence of a cure within the amended answers. *See* TEX.R. CIV. P. 90; *cf. Humphreys v. Meadows*, 938 S.W.2d 750, 753 (Tex.App.—Fort Worth 1996, writ denied).

 Because the State's arguments in connection with this issue are obtuse and do not match the wording of the issue, it is not preserved for our review. *See* TEX.R.APP. P. 38.1(f), (g).[8] We overrule the State's issue on special exceptions.

## 14. The Summary Judgment Motions

 In the district court, the essential elements of the State's quo warranto action were that (1) On May 2, 1997 Mr. White was regularly and duly appointed as mayor of the Town of Westlake by its board of aldermen, (2) he took the oath of office and entered its duties on that date, and both holds and is lawfully entitled to hold that office as mayor, (3) Mr. Bradley formerly was the town's mayor until the removal trial on April 29, 1997 when he was lawfully removed from office by a judgment entered under section 21.002(f), and (4) since his lawful removal from the office of mayor, Scott Bradley has unlawfully usurped and intruded into the office of mayor and continues to claim that he is the lawful mayor of the town. *See, e.g., Phagan v. State ex rel. Eyssen*, 510 S.W.2d 655, 660 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.).

The summary judgment evidence and the applicable principles of law we have already discussed demonstrate that Mr. Bradley did not conclusively prove all essential elements of his defense in quo warranto as a matter of law. *See City of Houston*, 589 S.W.2d at 678. Nor did Mr. Bradley defeat at least one element of the State's claims in quo warranto. *See Science Spectrum*, 941 S.W.2d at 911. On the other hand, the summary judgment proof that the State submitted in district court conclusively proved the elements of the State's quo warranto action. At the time the quo warranto action was heard, all parties agreed that there were no genuine issues of material fact for the district court to address. And we find no genuine issues of material fact.

Having examined the record carefully against the standards of law that governed Mr. Bradley's removal trial, the quo warranto action brought by the State, on the relation of Mr. White, and the respective parties' motions for summary judgment, we conclude that the trial court erred by granting Mr. Bradley's motion for summary judgment. It is therefore unnecessary for us to address the State's complaint that the district court's judgment in favor of Mr. Bradley exceeded

8. TEX.R.APP. P. 74(d), 47 TEX. B.J. 579 (1986, revised 1997).

the relief authorized by statute for a quo warranto action.

### 15. Conclusion

We have found, for the reasons already discussed, that section 21.002 does not violate the constitutional doctrine that mandates the separation of powers in government; that section 21.002 is not unconstitutionally vague; that the removal trial did not violate Mr. Bradley's federal and state constitutional rights to due process; that a mayor or alderman of a general-law municipality whose removal is sought pursuant to the provisions of section 21.002 has no constitutional or statutory right to a conventional jury, a change of venue, recusal of members of the special court, or to exclude aldermen from testifying as witnesses; that a removal trial under the provisions of section 21.002 is not penal in nature, but instead is a civil trial to be conducted under rules of civil procedure for justice courts, as far as the statutory purpose of the proceeding permits the adaptation of those rules to a removal trial; that the special court and the trial were not subject to the provisions of the Open Meetings Act; that there is no competent summary judgment evidence that the aldermen had a direct pecuniary interest in the subject matter or judgment of the trial; that competent summary judgment evidence demonstrates that [1] charges were duly preferred against Mr. Bradley, [2] there was a trial in the special court, and [3] evidence was adduced at trial tending to sustain the charges; and that, as a matter of law, a board of aldermen elected after the trial have neither statutory nor inherent power to grant a motion for new trial or accept an appeal bond.

Accordingly, we conclude that, as a matter of law, the trial court erred by denying the State's motion for summary judgment. We have overruled the State's issue number 1 on special exceptions. We sustain State's issue number 2, that the trial court erred by granting Mr. Bradley's motion for summary judgment, and we sustain State's issue number 3, that the trial court erred by denying the State's motion for summary judgment. We do not reach State's issue number 4 complaining that the relief granted in the district court's summary judgment exceeds the relief authorized by statute. *See* TEX. CIV. PRAC. & REM.CODE § 66.003 (Vernon 1997).

We reverse the district court's judgment and render judgment granting the State's summary judgment motion. Judgment is rendered that on April 29, 1997 Scott Bradley was lawfully removed from the office of mayor of the Town of Westlake; that Dale White is the lawful mayor of the Town of Westlake, and that he has been the lawful mayor of that town since May 2, 1997; that to the extent, if any, that Scott Bradley sought affirmative relief in the quo warranto action, it is denied; and that all costs of court in the quo warranto action and all costs of this appeal are adjudged against Scott Bradley.